# EXHIBIT B

Electronically Filed by Superior Court of California, County of Los Angeles on 08/05/2019 09:32 AM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Clifton,Deputy Clerk
19STCV27416

| | **SUM-100** |
|---|---|

## SUMMONS
### (CITACION JUDICIAL)

*SCB*
*PSC1481*
*8-7-19*

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
GREGORY BLATT, IAC/INTERACTIVE CORP. and MATCH
GROUP, INC.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
ROSETTE PAMBAKIAN

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* LOS ANGELES SUPERIOR COURT<br>STANLEY MOSK COURTHOUSE<br>111 N. HILL STREET, LOS ANGELES, CA 90012 | CASE NUMBER:<br>*(Número del Caso):*<br>19STCV27416 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
M. Elizabeth Graham, Grant & Eisenhofer,101 California Street, Ste 2710, San Francisco, CA (415) 365-9585

Sherri R. Carter Executive Officer / Clerk of Court

| DATE:<br>*(Fecha)* | 08/05/2019 | Clerk, by<br>*(Secretario)* | Romunda Clifton | , Deputy<br>*(Adjunto)* |
|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* **MATCH GROUP, INC**

   under: ☒ CCP 416.10 (corporation)  ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)

   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|

Electronically FILED by Superior Court of California, County of Los Angeles on 08/05/2019 09:40 AM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Clifton, Deputy Clerk

Case 2:19-cv-07053-MWF-PPM Document 1 Filed 08/13/19 Page 3 of 61 Page ID #:74

19STCV27416

Assigned for all purposes to: Spring Street Courthouse, Judicial Officer: Stephen Goorvitch

M. Elizabeth Graham, CA 143085
Grant & Eisenhofer, P.A.
101 California Street, Suite 2710
San Francisco, California 94111
Phone: (415) 365-9585
Fax: (415) 365-9650
Email: egraham@gelaw.com

*Additional Counsel for Plaintiff on Signature Page*

## IN THE SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES – UNLIMITED CIVIL JURISDICTION

| | |
|---|---|
| ROSETTE PAMBAKIAN,<br><br>               Plaintiff,<br><br>    v.<br><br>GREGORY BLATT,<br>IAC/INTERACTIVE CORP. and<br>MATCH GROUP, INC.<br><br>               Defendants. | CASE NO. _____<br><br>**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**<br><br>(1) Negligence<br>(2) Intentional Infliction of Emotional Distress<br>(3) Sexual Battery (Civ. Code § 1708.5)<br>(4) Gender Violence (Civ. Code § 52.4)<br>(5) Ralph Act Violation (Civ. Code § 51.7)<br>(6) Negligent Misrepresentation<br>(7) Wrongful Termination (Labor Code § 1102.5)<br>(8) Retaliation for Engaging in Protected Activity (Gov. Code § 12940)<br><br>**JURY TRIAL DEMANDED** |

1    Plaintiff Rosette Pambakian, ("Plaintiff") by her attorneys, files this Complaint
2    seeking judgment against Defendants GREGORY BLATT (hereinafter, "Defendant
3    Blatt"), IAC/INTERACTIVE CORP. (hereinafter, "IAC") AND MATCHGROUP,
4    INC. (hereinafter, "Match Group" or "Match") (collectively, "Defendants") for
5    claims arising from a sexual assault perpetrated by Defendant Blatt on
6    Ms. Pambakian while both were employed at Tinder, Inc., the subsequent cover-up
7    by Defendants, and the retaliatory wrongful termination of Ms. Pambakian, and
8    alleges as follows:

9                           **I.     SUMMARY OF CLAIMS**

10   1.      This case is about the abuse of the personal rights and well-being of
11   Plaintiff, Rosette Pambakian, a successful marketing executive, by an insidious
12   corporate culture that emphasized profit at all costs.  Plaintiff was one of the earliest
13   executive hires and the longest standing female executive at the dating app Tinder,
14   until her retaliatory termination in 2018.   While at an outside public relations agency,
15   Plaintiff spearheaded the launch of Tinder in 2012.  In 2014, she officially joined the
16   company as Tinder's Head of Communications, where she was essential to building
17   the company from its early startup phase into the world's most popular dating app, a
18   multi-billion dollar enterprise and technology innovator.

19   2.      Plaintiff has been credited as an integral part of Tinder's success.
20   Several Tinder founders have commented that Tinder could not have gotten where it
21   did without the expertise and dedication of Plaintiff.  When parent company Match
22   marked its IPO in November 2015, due in large measure to the success of Tinder,
23   Ms. Pambakian was invited to the NASDAQ trading floor for the ceremonial ringing
24   of the bell.  She was named one of the 40 under 40 by PR Week, one of Refinery 29's
25   Top Women in Tech, and included in Cosmopolitan Magazine's Millennial Power
26   List, all for her work at Tinder. Plaintiff's career was on the rise until she was
27   sexually assaulted by the CEO of Match Group and Tinder, Gregory Blatt.

28

1    3.    Before stepping in, and while serving as, interim CEO of Tinder,

2    Defendant Blatt was also the CEO and Chairman at Match Group.  Match Group and

3    its parent company IAC (hereinafter, "Company Defendants"), owned Tinder.

4    However, when Defendant Blatt and his team arrived at Tinder, they brought IAC

5    and Match Group's misogynistic culture with them.

6    4.    Defendant Blatt has a reputation for being a notorious bully, known for

7    volatile outbursts and vindictive retribution.  Plaintiff endured Defendant Blatt's

8    inappropriate behavior throughout their working relationship, culminating in

9    December 2016 when he physically and sexually assaulted Plaintiff.

10    5.    As soon as the Company Defendants became aware of Defendant Blatt's

11    assault and the events leading up to it, including the cultivation of a harassing work

12    environment that rewarded men like Defendant Blatt, the Company Defendants

13    began a campaign to cover up the assault and disparage Plaintiff.  Indeed, a

14    meaningful "investigation" of Plaintiff's complaint about Defendant Blatt's assault,

15    which was required under IAC and Match company policies, and California law,

16    never occurred.  The Company Defendants failed to interview a key eyewitness and

17    ignored damning facts, because the Company Defendants did not want to risk their

18    bottom line.  Rather, Plaintiff was marginalized, subject to additional harassing,

19    offensive, and insulting behavior, put on administrative leave, publicly accused of

20    consenting to her attacker's advances, and finally, wrongfully terminated by

21    Defendants.

22                **II.    PARTIES**

23    6.    Plaintiff is an individual who was and is at all times relevant to the

24    claims alleged herein, a resident of Los Angeles County, California.  At all times

25    relevant to the claims herein, Plaintiff was employed and worked at Tinder

26    headquarters in Los Angeles, California.

27

28

2

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1      7.     Tinder, Inc. ("Tinder), at all times relevant to the claims alleged herein,

2  was a Delaware corporation with its principal place of business in Los Angeles,

3  California. From March 11, 2013 to July 13, 2017, Tinder was a Delaware

4  corporation owned by Match Group. On July 13, 2017, Match Group merged Tinder

5  into itself. On information and belief, Match Group assumed all of Tinder's

6  liabilities and obligations, including those arising from Plaintiff's sexual assault, the

7  inadequate investigation of Plaintiff's complaints about the assault, and Defendants'

8  subsequent attempts to cover up both the events giving rise to Plaintiff's complaints

9  and Plaintiff's complaints themselves.

10      8.     Defendant Gregory Blatt is an individual, who at all times relevant to the

11  claims alleged herein, was employed by Defendant Match Group and maintained an

12  office at Tinder headquarters in Los Angeles, CA.

13      9.     Defendant IAC, is, and at all relevant times mentioned herein was a

14  corporation organized under the laws of the State of Delaware. At all relevant times

15  mentioned herein, IAC's primary place of business was located in New York, New

16  York. IAC owns or controls Match Group, Inc.

17      10.    Defendant Match Group is, and at all relevant times mentioned herein,

18  was a corporation organized under the laws of the State of Delaware. At all relevant

19  times mentioned herein, Match Group's primary place of business was located in

20  Dallas, Texas. Before Match became a public company on November 19, 2015, it

21  was a wholly owned subsidiary of IAC. Since November 19, 2015, IAC has owned a

22  majority of Match Group's outstanding shares.

23                  **III.   JURISDICTION AND VENUE**

24      11.    This Court has jurisdiction over this action pursuant to California Code

25  of Civil Procedure § 410.10. Plaintiffs seek damages under the statutory and

26  common law of the State of California.

27

28

1    12.    Venue is proper in this Court pursuant to California Code of Civil

2    Procedure § 395 because (a) some of the acts and transactions described herein

3    occurred within this county, including Plaintiff's employment with Defendants, the

4    sexual assault of Plaintiff, the resulting "investigation," and ultimate termination of

5    Plaintiff; (b) some Defendants are or were registered to do business in the State of

6    California and/or are or were doing business within this county; and (c) Defendants

7    did do business in this county by operating and/or exercising complete control over

8    the operations of the company formerly known as Tinder, Inc.

9                   **IV.    FACTS COMMON TO ALL CAUSES OF ACTION**

10   **A.    Defendant Blatt's Sexual Assault of Plaintiff**

11   13.    In December 2016, Plaintiff was the longest standing (and one of the

12   only) female executives at Tinder.  Plaintiff held the executive position of Vice

13   President of Global Communications and Brand.  Her role eventually expanded to

14   Head of Marketing and Communications, managing an in-house group of more than

15   40 people, as well as external agencies and consultants.  Publicly, she served as the

16   face of the brand on panels and in the press.

17   14.    During all events described herein, Defendant Blatt was the CEO and

18   Chairman of Match Group, as well as the CEO of Tinder, and directly in charge of

19   Plaintiff.

20   15.    On December 9, 2016, Tinder held its holiday party at the SLS Hotel in

21   Beverly Hills Hotel, in Los Angeles, California.  Plaintiff attended the party.  Several

22   Tinder employees had rooms at the hotel, paid for by Tinder, including Witness No.

23   1, Defendant Blatt's Executive Assistant.

24   16.    At the party, Defendant Blatt approached Plaintiff and said to her in a

25   lewd voice, in sum and substance, "I get hard every time I look at you" and "Let's get

26   out of here."  Plaintiff was stunned.   Defendant Blatt's conduct was so aggressive

27   that Plaintiff feared that Defendant Blatt might actually act on it.  Plaintiff quickly

28

1   walked away from Defendant Blatt, found a colleague and close friend, Witness No.

2   2, and went upstairs to friend and colleague, Witness No. 1's hotel room, in an

3   attempt to distance herself from Defendant Blatt.

4        17.    Plaintiff, Witness No. 1 and Witness No. 2, were upstairs in Witness No.

5   1's hotel room at approximately 2:00 AM when, Defendant Blatt texted Witness No.

6   1. Plaintiff asked Witness No. 1 not to tell Defendant Blatt where they were.  Several

7   minutes later, there was a knock at the door.  Witness No. 1 answered the door and

8   Plaintiff saw that Defendant Blatt had arrived at the room.  When Defendant Blatt

9   arrived, Plaintiff was sitting on the bed.

10        18.    Immediately upon entering the room, Defendant Blatt went straight for

11   Plaintiff who was sitting on the bed.  Defendant Blatt climbed on top of Plaintiff and

12   pulled her backwards so that Plaintiff was lying beside him with his arm draped over

13   Plaintiff.  Defendant Blatt then began forcibly groping Plaintiff's breasts and upper

14   thighs, and kissing her shoulders, neck and chest—all without Plaintiff's consent.

15   Then, Defendant Blatt said, sum and substance, "Turn off the lights."  In a state of

16   shock and disbelief, Plaintiff was also acutely aware of the subordinates in the room,

17   and made the decision to de-escalate the situation and not cause a further scene.

18   Plaintiff began to pull away from Defendant Blatt and said, in sum and substance,

19   "Ok, we are all hungry; I'm going to order food."  Defendant Blatt then removed his

20   hands from Plaintiff enabling her to stand up.

21        19.    Plaintiff, Defendant Blatt, Witness No. 1 and Witness No. 2 remained in

22   Witness No. 1's room waiting for the food to arrive.  At some point after the food

23   was ordered, Defendant Blatt again pushed Plaintiff onto the bed and began groping

24   her and attempting to kiss her.  While again attempting to end Defendant Blatt's

25   unwanted sexual contact and remove herself from his immediate proximity, Plaintiff

26   announced it was time to leave.  Witness No. 1, begged Plaintiff not to leave her

27   alone with Defendant Blatt.  Plaintiff and Witness No. 2 waited until Defendant Blatt

28

1   left in his car service to request separate Ubers and went to the lobby to await their
2   respective rides.

3   **B.     The Aftermath of Blatt's Assault**

4       20.     Defendant Blatt was the CEO of Tinder, the Chairman and CEO of
5   Match Group, and Plaintiff's boss.  Plaintiff knew that Defendant Blatt was a
6   powerful man, a long-time executive at Match Group and IAC, and feared retaliation
7   and the loss of her job at Tinder.  Plaintiff's fears were based on Defendant Blatt's
8   reputation for openly behaving inappropriately toward women without any
9   consequences.  Defendant Blatt seemed untouchable.

10      21.     Plaintiff feared damage to her reputation and a change in how she would
11  be perceived by her subordinates and colleagues if her assault were made public.
12  Plaintiff also feared damage to Tinder's business, which she had worked years to
13  build.

14      22.     The morning after the sexual assault, Plaintiff asked Witness No. 1 and
15  Witness No. 2 not to share what had happened with anyone.

16      23.     Two days after the assault, Defendant Blatt called Plaintiff into his
17  office and apologized profusely for his actions the night of the holiday party.  Faced
18  with the reality that she would have to continue to work with and be supervised by
19  Defendant Blatt—the new CEO of Tinder—and scared of the consequences to her
20  working relationships and reputation if the sexual assault were made public, Plaintiff
21  and Defendant Blatt agreed to quash the incident and not to speak of it again.

22  **C.     Plaintiff Reported the Assault to Her Supervisor**

23      24.     Several days after the sexual assault, Plaintiff attended a Tinder/Match
24  Communications Team Dinner.  Also present was Vice President of Public Affairs
25  for Match Group, Matt David, to whom Plaintiff also reported.  At all times relevant
26  herein, Mr. David reported directly to Defendant Blatt.

27

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1    25.    During this dinner, Plaintiff told Mr. David about the sexual assault.

2  Plaintiff felt that it was necessary to report Defendant Blatt's actions to Mr. David

3  both because Defendant Blatt's actions were unacceptable and because she feared a

4  potential public relations crisis as there were witnesses to the assault.

5    26.    In response, Mr. David said nothing.  However, Mr. David's expression

6  was one of shock.

7    27.    On information and belief, rather than comply with the obligations

8  placed on him to report any such complaints to Human Resources, Mr. David did not

9  report Defendant Blatt's misconduct to Human Resources.

10  **D.     The   Company   Defendants'   Inadequate   and   Biased   "Investigation"**

11  **Amounts to a Cover-Up of Defendant Blatt's Misconduct**

12    28.    On information and belief, Sean Rad, former Tinder CEO and then-

13  Tinder Chairman, began hearing rumors of Defendant Blatt's disturbing behavior

14  toward Plaintiff at the Holiday Party from multiple sources, including indirectly from

15  Witness No. 1.  Mr. Rad took Plaintiff aside, told her that he heard something

16  happened at the holiday party, and asked her if there was anything she wanted to tell

17  him.  Plaintiff relayed to Mr. Rad what Defendant Blatt said to her at the holiday

18  party and how he assaulted her in Witness No. 1's hotel room.

19    29.    On information and belief, Mr. Rad reported Defendant Blatt's sexual

20  assault of Plaintiff to Gregg Winiarski, Executive Vice President and General

21  Counsel of IAC, Joey Levin, CEO of IAC, and Jared Sine, Chief Legal Officer of

22  Match Group.  On information and belief, Mr. Rad also discussed the incident with

23  Lisa Nelson, Chief Human Resources Officer at Match Group and Tinder.  On

24  information and belief, Ms. Nelson told Mr. Rad that she was contemplating quitting

25  her job because of Defendant Blatt's alleged behavior.  On information and belief,

26  Mr. Rad thereafter learned that there would be an investigation and that Mr. Sine and

27

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1 | Ms. Nelson would be running it.  Both of these individuals reported directly to
2 | Defendant Blatt.

3 |       30.    On information and belief, Mr. Rad expressed his fears that the
4 | investigation was biased, because two executives who reported directly to Defendant
5 | Blatt, the subject of the investigation, were in fact in charge, but his concerns fell on
6 | deaf ears.

7 |       31.    On information and belief, after Mr. Rad reported Defendant Blatt's
8 | assault, Mr. Rad started receiving threats from Match executives that if he did not
9 | stop pursuing the investigation into Defendant Blatt's misconduct he would face
10 | retribution.

11 |       32.    Mr. Rad pressed Tinder and Match Board members for a meeting of
12 | Tinder's Board of Directors to discuss Defendant Blatt's assault on Plaintiff, to no
13 | avail.  On information and belief, Defendant Blatt emailed the board members and
14 | discouraged them from speaking to Mr. Rad.

15 |       33.    On information and belief, Matt Cohler, a General Partner of
16 | Benchmark and then-Tinder Board member, told Mr. Rad that there was no reason
17 | for a board meeting, and that the Tinder Board could not do anything until Plaintiff
18 | formally "reported" the assault—notwithstanding the fact that she already had
19 | reported it to her direct supervisor (Mr. David) and Tinder's Chairman (Rad).

20 |       34.    On information and belief, Mr. Rad spoke with a then-Match Board
21 | member, to express concern about the way Plaintiff's complaint was being handled.
22 | Consistent with their corporate culture emphasizing profit over people, the Match
23 | Board Member assured Mr. Rad he had nothing to worry about because, in sum and
24 | substance, "everyone [was] going to make a lot of money."

25 |       35.    On information and belief, the Tinder Board of Directors was never
26 | convened regarding Defendant Blatt's sexual assault of Plaintiff.

27 |
28 |

36.     On April 28, 2017 - which, on information and belief, was approximately one day after Mr. Rad reported Defendant Blatt's sexual assault of Plaintiff to Defendants IAC and Match Group executives – Defendant Blatt exercised approximately 5 million stock options in Match Group, realizing over $44 million in value.  The questionable timing of this transaction cannot be ignored, given the affect a scandal of this magnitude could have on Match Group's stock price if made public.

37.     On or about April 30, 2017, Plaintiff was approached by Lisa Nelson, Chief Human Resources Officer to discuss the sexual assault.  Plaintiff was leery of speaking with Ms. Nelson, as Plaintiff was aware that Ms. Nelson was very closely linked to Defendant Blatt, having worked with him for many years, and that she reported directly to him.

38.     Plaintiff told Ms. Nelson that she was reluctant to talk with her and wanted to ensure confidentiality out of fear of retaliation by Defendants.  Only after Ms. Nelson assured Plaintiff of the confidentiality of her statements did Plaintiff agree to speak to Ms. Nelson.

39.     When Plaintiff met with Ms. Nelson, Jared Sine, Chief Legal Officer at Match, was also present.  Plaintiff confirmed the sexual assault.

40.     On May 3, 2017, Plaintiff was asked to meet with Ed Ferguson, Vice President and Associate General Counsel at IAC, and Mr. Sine.  During this meeting, Plaintiff again recounted Defendant Blatt's assault.  Mr. Ferguson told Plaintiff that they had spoken to Defendant Blatt and he had insinuated that it was consensual.  In response, Plaintiff told the men that Defendant Blatt had approached her earlier at the Holiday Party and said, "I get hard every time I look at you," and "Let's get out of here."  She explained that she immediately walked away embarrassed, stunned, and concerned that he might actually try to act on it.  Both Mr. Ferguson and Mr. Sine expressed shock and were appalled by Defendant Blatt's actions.  Both apologized to Plaintiff for having to endure such an incident.

41.     Just one day following her meeting with Mr. Sine and Mr. Ferguson, despite assurances of confidentiality and privacy, Defendant Blatt emailed Plaintiff and his Executive Assistant, Witness No. 1, asking both women to participate in separate video conferences with him.  Plaintiff knew in that moment that Defendants' promise of confidentiality had been violated and that information was going from Human Resources and Defendants IAC and Match Group's Legal Counsel to Defendant Blatt.

42.     Plaintiff did not respond to Defendant Blatt's email and did not attend the video conference, but, upon information and belief, Witness No. 1 did.  After the video conference, Witness No. 1 group-texted Plaintiff and Chief Human Resources Officer Lisa Nelson and told them, in sum and substance, that Defendant Blatt knew everything that they had said to Ms. Nelson and Mr. Sine.  During a phone conversation later that day, Witness No. 1 told Plaintiff that Defendant Blatt had begged her not to continue cooperating in the investigation as it would ruin his life and his family.

43.     After talking with Witness No. 1, Plaintiff responded to the group text that she did not feel comfortable talking further about what happened until she consulted with a lawyer.  Ms. Nelson responded that she understood.  After this text, Plaintiff was no longer contacted as part of the "investigation."

44.     The purported "investigation" Company Defendants conducted did not comply with either California law or their own internal policies.  The Company Defendants used the investigation as an attempt to cover-up and conceal the misconduct of Defendant Blatt.

45.     For example, Defendants' purported "investigators" failed to interview one of the two eyewitnesses to the sexual assault, Witness No. 2.  Instead, among those two eyewitnesses, Defendants only interviewed Witness No. 1 – Defendant Blatt's Executive Assistant.  As Witness No. 2 was present in the room, and

1    witnessed the assault, no adequate investigation could be conducted without

2    interviewing Witness No. 2. Furthermore, while the purported "investigation" was

3    ongoing, Defendants required Plaintiff to continue to report to Defendant Blatt. The

4    Company Defendants also told Defendant Blatt information provided by Plaintiff and

5    other witnesses, violating promises of confidentiality.

6        46.     In or around July 2017, a reporter from Tech Crunch began asking

7    Plaintiff questions about rumors of sexual misconduct at Tinder by high-level Match

8    Group executives. A few months later, Plaintiff learned that the same reporter was

9    still investigating, and that the story was about Plaintiff's own assault at the hands of

10    Defendant Blatt.

11        47.     Plaintiff informed Defendant Blatt and Chief Human Resources Officer,

12    Ms. Nelson, about the reporter's inquiry. Defendant Blatt, Plaintiff's own

13    perpetrator, asked Plaintiff to talk with the reporter to explain the ways Tinder

14    combats sexual harassment, and to throw the reporter off the story. Plaintiff refused

15    to comply with Blatt's instruction, and referred the reporter to the Head of

16    Communications at IAC.

17        48.     In or around October 2017, when it became apparent that Defendant

18    Blatt and Company Defendants could no longer get Plaintiff to say or do whatever

19    Defendants needed or wanted to cover-up the assault, they asked Plaintiff to sign a

20    non-disclosure/disparagement agreement ("NDA") concerning the sexual assault and

21    investigation, in exchange for increased compensation. Chief Human Resources

22    Officer at Match Group and Tinder, Lisa Nelson, approached Plaintiff and said in

23    sum and substance that she and Defendant Blatt would petition the Compensation

24    Committee to increase Plaintiff's compensation if she signed the NDA. During that

25    conversation, Ms. Nelson said to Plaintiff, in sum and substance, "We want to put

26    this terrible ordeal behind us." Plaintiff declined to sign.

27

28

49.     After declining to sign the NDA, Plaintiff became aware that Defendant Blatt was going to resign as Tinder CEO.  During a conversation with Plaintiff, Defendant Blatt, and another male executive, the male executive asked Defendant Blatt what it would take to get Defendant Blatt to stay.  Defendant Blatt turned to Plaintiff and said in sum and substance, "Well, you would have to sign something." Defendant Blatt immediately walked it back, saying in sum and substance to Plaintiff, "Never mind, I shouldn't have said that, I could get in big trouble."  It was then clear that Defendant Blatt was being asked to resign because of his sexual assault of Plaintiff.

50.     Upon information and belief, even after resigning, Defendant Blatt retained his Tinder and Match Group email accounts, worked from the IAC Office for several months, and appeared actively involved in Defendants IAC and Match Group's business.  Defendant Blatt also continued to "check in" on Plaintiff to ensure she would not speak out publicly.

51.     Through their actions and inaction, Company Defendants violated their own internal policies.  IAC and Match Group's stated policy is to be "good corporate citizen(s)" and "committed to full, prompt, and fair enforcement" of their Code of Ethics.  The Code of Ethics states that, upon reporting of a violation of the Code of Ethics, IAC and Match Group legal departments shall investigate all relevant facts. IAC and Match Group's Code of Ethics also specifically prohibits retaliation.

52.     Pursuant to the Code of Ethics, "In conducting and monitoring investigations, the IAC Legal Department shall consult and coordinate as appropriate with senior management, the Internal Audit Department, the Human Resources Department, and the Audit Committee, and shall seek to ensure that the provisions of the Code of Ethics are applied and enforced consistently across the population of covered persons and across IAC business."  Match Group's Code of Ethics has this identical provision.

53.   IAC and Match Group also have a stated policy against harassment. Pursuant to this policy, "It is the policy of IAC/InterActiveCorp and its Operating Businesses and Corporate Office . . . to be committed to a workplace free of discrimination or harassment.  Harassment of applicants or employees on the basis of . . . sex, including sexual harassment, is unacceptable and will not be tolerated."

54.   IAC and Match Group's Policy defines sexual harassment as "offensive or unwelcome sexual advances, verbal comments or innuendo of a sexual nature. . . . Comments, physical touching of another person . . . may also constitute sexual harassment."  Pursuant to this policy, "Human Resources will investigate all reports of harassment promptly and thoroughly."

55.   All of these policy statements turned out to be false and misleading.

56.   The Company Defendants disregarded their stated policies when the allegations were against CEO Defendant Blatt.  Instead, they engaged in a sham investigation conducted by biased executives in an effort to conceal and discredit the sexual assault suffered by Plaintiff.   Only when faced with the fact that they could no longer keep the assault quiet, did the Company Defendants take any action.

57.   The Company Defendants were willful, wanton, reckless, negligent in overseeing and supervising and grossly negligent as a result of its employee, agent and/or servant's acts as follows:

> a. In failing to supervise and control Defendant Blatt's sexual misconduct;
>
> b. In failing to conduct an unbiased, independent, prompt, and legally compliant investigation;
>
> c. In retaining Defendant Blatt as CEO for approximately 10 months after he assaulted Plaintiff;
>
> d. In failing to use ordinary skill and care to protect Plaintiff; and

13

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

e.  In such other ways as will become evident during discovery.

58.    The Company Defendants' knowing acquiescence and silence with respect to the known, or reasonably knowable, activities of Defendant Blatt constituted a course of conduct through which Defendant Blatt's sexual assault of, and retaliation against, Plaintiff was condoned, approved and authorized. The Company Defendants' actions made clear that, but for the reporters learning of the assault, the Company Defendants would have taken no action against Defendant Blatt.

59.    Through the Company Defendants' failure to timely investigate Plaintiff's complaint and/or reprimand and sanction the acts referenced herein, and for all of the other reasons set forth in this Complaint including, without limitation, their failure to take the steps necessary to prevent and/or independently investigate the occurrence of such reprehensible acts, the Company Defendants ratified said actions and, accordingly, are vicariously liable for the actions of Defendant Blatt.

**E.    Plaintiff's Retaliatory and Wrongful Termination**

60.    On August 14, 2018, Plaintiff filed a lawsuit with several others regarding the valuation of her stock options, alleging in part that when Plaintiff's assault was reported to Defendants IAC and Match Group executives, they failed to properly investigate and take timely corrective action against Defendant Blatt.  The suit alleged that the Company Defendants failed to act because they needed Defendant Blatt, whom as CEO and the highest-ranking executive in charge of the valuation process of Tinder, was the lynchpin in Company Defendants' scheme to undervalue Tinder and decrease the amount Plaintiff and her fellow Tinder stock holders would receive in exercising their stock options by billions of dollars.

61.    The next day, the Company Defendants placed Plaintiff on "leave."

62.    The Company Defendants immediately revoked Plaintiff's email account—forcing incoming emails to bounce back to the sender—removed her

14

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1   nameplate from her office door, and turned her office into a conference room.  Within

2   one month, and three months before officially terminating Plaintiff, the Company

3   Defendants hired a new Chief Marketing Officer to replace her.

4       63.     On December 18, 2018, Plaintiff received notice via e-mail that Tinder

5   was terminating her employment.  Upon information and belief, Defendants

6   terminated Plaintiff in retaliation for speaking out against Defendant Blatt for his

7   sexual misconduct and for participating in a lawsuit against the Company Defendants

8   related to her stock options.

9       64.     As a result of these actions, Plaintiff was forced to surrender millions of

10  dollars in equity granted to her as compensation for her work as an executive at

11  Tinder.

12  **F.     The Company Defendants Fostered a Misogynistic Work Culture that**

13          **Promoted Sexual Harassment and Assault**

14      65.     The Company Defendants promoted a misogynistic culture where

15  female employees were marginalized and sexually harassed on a regular basis.  From

16  the time that Defendant Blatt and other Company Defendants' executives arrived

17  from Match Group at Tinder, it became clear that their corporate culture and

18  managerial style was not respectful towards women, including Plaintiff.

19      66.     After Defendant Blatt arrived, he quickly made it difficult for Plaintiff to

20  do her job effectively.  Because she was a young woman, Defendant Blatt treated

21  Plaintiff differently than other executives.  Despite her experience and track record as

22  a successful marketing executive, Defendant Blatt did not take Plaintiff seriously.

23  On more than one occasion when Plaintiff disagreed with him and/or addressed

24  Defendant Blatt in a professional tone in meetings,  Defendant Blatt responded by

25  asking Plaintiff to leave the meetings and come back "when [her] attitude changed."

26      67.     On another occasion, Plaintiff was told by a fellow marketing executive,

27  that when he asked Defendant Blatt about a budget for activities to boost the

28

marketing team's morale, Defendant Blatt said: Plaintiff and two of her female team members *"were* the team morale," because in his view "they were hot." The male executives then joked about how one of the women did not count "because she had peaked" and "wasn't getting any prettier, so she needed to get married tomorrow." This is but one example of how Defendant Blatt objectified women in his employ and spread a misogynistic work culture, which promoted sexual harassment and assault.

68.     Out of a sense of responsibility to protect the company she had helped build, Plaintiff fought against Match Group's misogynistic culture, to her detriment. Behind the scenes Plaintiff fought for equal pay for the women on her team who were grossly underpaid compared to male counterparts, asked for an official pay audit to be conducted, promoted women to titles equal to male counterparts, advocated for the company to cover egg-freezing for its female employees, advocated for a more female centric approach to product development, and asked for an anonymous reporting tool be implemented by Human Resources for reporting complaints of sexual harassment within the company. Her efforts to advance women's rights within the company and on the platform were so contrary to Defendants' culture that they led to threats of violence and a covert smear campaign on Twitter by one male employee. In yet another example of how Defendants marginalized Plaintiff and emphasized profit over people, when they discovered the male employee who was responsible for a smear campaign and threats against Plaintiff, Defendants allowed him to quietly resign, rather than fire him and risk a scandal.

69.     As a direct and proximate result of the foregoing, Plaintiff has suffered, and continues to suffer, severe emotional distress. Plaintiff has suffered, and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full

16
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  enjoyment of life; and/or has suffered a loss of income and/or loss of earning
2  capacity.

3      70.   Defendants and each of them, engaged in the conduct alleged herein
4  with malice, oppression, and fraud. The conduct of Defendants, and each of them,
5  was despicable and was done with a willful and knowing disregard of the rights or
6  safety of Plaintiff. Defendants, and each of them, knew that Defendant Blatt engaged
7  in sexual misconduct against Plaintiff, yet they continued to retain him as CEO and
8  allowed him to retaliate against Plaintiff. Defendants' conduct was despicable and
9  subjected Plaintiff to cruel and unjust hardship in knowing disregard of her rights.
10  Their conduct was so vile, base, and contemptible that it would be looked down on
11  and despised by reasonable people. Defendants intentionally conducted a biased
12  "investigation" of Defendant Blatt's sexual assault of Plaintiff with reckless
13  indifference toward Plaintiff's health, safety, and emotional well-being. Defendants'
14  conduct alleged herein is outrageous and so extreme that it goes beyond all possible
15  bounds of decency. A reasonable person would regard the conduct of Defendants as
16  intolerable in a civilized community.

17  **V.   CAUSES OF ACTION**

18  <u>**FIRST CAUSE OF ACTION**</u>

19  <u>**(AGAINST DEFENDANTS MATCH AND IAC)**</u>

20  **Negligence**

21      71.   Plaintiff incorporates herein by reference, as though set forth in full, all
22  proceeding Paragraphs of this Complaint.

23      72.   Prior to the incidents, Defendants Match Group and IAC, and each of
24  them, expressly and implicitly warranted to Plaintiff that Defendants, in the event of
25  a sexual assault at the Company, would provide a thorough and unbiased
26  investigation and take immediate action to address such an occurrence.

27

28

73.   At all relevant times herein Defendant Blatt, while in the course and scope of his employment with Company Defendants, intended to cause harmful or offensive contact with intimate parts of Plaintiff, and sexually offensive contact with Plaintiff directly and indirectly resulted therefrom.

74.   At all relevant times herein, Defendant Blatt, while in the course and scope of his employment with Company Defendants, acted to cause Plaintiff to be in imminent apprehension of sexually offensive contact, and sexually offensive contact with Plaintiff directly and indirectly resulted therefrom.

75.   The Company Defendants owed to the public in general, and to Plaintiff in particular, a duty to reasonably and promptly identify, remove, and/or report to law enforcement authorities and/or to government agencies individuals who it knew, or should have known, were sexual predators in its employ.  The Company Defendants owed to the public in general, and to Plaintiff in particular, a duty to reasonably supervise and/or monitor individuals who it knew, or should have known, were sexual predators in its employ.  The Company Defendants owed to Plaintiff a duty to control the acts of their agents, servants, and/or employees.

76.   The acts and omissions of The Company Defendants complained of herein constitute negligent and reckless hiring, training, supervision, and retention of Defendant Blatt.  It was foreseeable that if the Company Defendants did not adequately exercise or provide the duty of care owed to female employees in their care, including, but not limited to Plaintiff, they would be vulnerable to sexual misconduct by Defendant Blatt.  Based on the acts alleged above, The Company Defendants knew, or should have known, that their failure to exercise due care toward Plaintiff would, and did, cause Plaintiff severe emotional distress.

77.   The Company Defendants did not have in place or failed to enforce adequate, reasonable, and necessary rules, regulations, policies, and procedures that could effectively identify, and deal with sexual predators such as Defendant Blatt.

The Company Defendants did not have in place adequate, reasonable, and necessary rules, regulations, policies, and procedures for the prompt removal of sexual predators in the employ and/or service of the Company Defendants.

78.   The Company Defendants failed to fulfill their legal duty to protect Plaintiff from the sexual misconduct of Defendant Blatt and the ensuing retaliatory treatment.  These failures included the following:  (a) failure to reasonably and investigate allegations of sexual misconduct; (b) failure to properly train and instruct investigators; (c) failure to have in place and enforce standards of acceptable and unacceptable conduct; and (d) failure to designate competent investigators to evaluate complaints of sexual misconduct.

79.   Moreover, the negligent, reckless, outrageous, deliberately and recklessly indifferent and unlawful conduct of the Company Defendants, as set forth above and herein, further consisted of:

    a.  failing to properly and adequately supervise and discipline their employees to prevent the improper touching that occurred to Plaintiff;

    b.  failing to adopt, enforce and/or follow adequate policies and procedures for the protection and reasonable supervision of female employees, including Plaintiff, and, in the alternative, failing to implement and comply with such procedures which had been adopted;

    c.  failing to implement, enforce and/or follow adequate protective and supervisory measures for the protection of female employees, including Plaintiff;

    d.  creating an environment that facilitated improper touching by Defendant Blatt on Plaintiff;

e.  violating their own policies and/or by-laws regarding sexual misconduct by employees and executive;

f.  ignoring, concealing, or otherwise mitigating the seriousness of the assault perpetrated by Defendant Blatt;

g.  failing to properly supervise and/or discipline their employees; and

h.  failing to adequately and properly train their employees regarding sexual misconduct.

80.     The Company Defendants had a policy to independently investigate sexual assault/harassment, explicitly and/or implicitly represented to Plaintiff.

81.     The Company Defendants made these explicit and implied representations knowing that they were false and/or having reason to believe that they were false, and with the expectation that they would be relied upon by female employees who decided to work at for The Company Defendants.

82.     The Company Defendants did not have in place adequate, reasonable, and necessary rules, regulations, policies, and procedures with respect to the removal and/or supervision of individuals in its employ or service who were suspected of being sexual predators.

83.     The Company Defendants failed to reasonably supervise and/or monitor individuals who it knew, or should have known, were sexual predators in their service and employ.

84.     The Company Defendants further breached their duty of care to Plaintiff by failing to protect the Plaintiff from foreseeable harm from the sexual misconduct of an employee of Defendants.

85.     The Company Defendants ratified the improper touching and harassment committed by Defendant Blatt by continuing to employ him and allowing him to be in charge of female employees including Plaintiff, after having actual knowledge that Defendant Blatt had improperly touched and harassed Plaintiff.

86.     Plaintiff is informed and believes and thereon alleges that she will continue to suffer extreme mental, physical, and pain and suffering in the future as a result of the injuries alleged herein.

## SECOND CAUSE OF ACTION
## (AGAINST ALL DEFENDANTS)
### Intentional Infliction of Emotional Distress

87.     Plaintiff incorporates herein by reference, as though set forth in full, all preceding Paragraphs of this Complaint.

88.     As described above, without Plaintiff's consent, the Company Defendant' employee and CEO Defendant Blatt engaged in unlawful, sexual misconduct and harassment against Plaintiff.

89.     Defendant Blatt's sexual misconduct conduct was outrageous and he acted with reckless disregard for the probability that Plaintiff would suffer emotional distress as a result of his actions.

90.     The Company Defendants allowed, adopted, approved, aided, abetted, and ratified the behavior of the Defendant Blatt by allowing him to continue to have female employees including Plaintiff report to him knowing that he had a history of sexual misconduct, including improperly touching and harassing female employees.

91.     The Company Defendants employed defendant Blatt.  The Company Defendants failed to adequately and promptly investigate and discipline Defendant Blatt.  By allowing Defendant Blatt to continue as the CEO after each of the aforementioned incidents and failing to adequately and promptly investigate and discipline him, Defendants approved, aided and abetted, adopted, and ratified Defendant Blatt's sexual misconduct.

92.     Plaintiff is informed and believes and thereon alleges that she will continue to suffer extreme mental, physical, and pain and suffering in the future as a result of the injuries alleged herein.

93.   As a further proximate result, Plaintiff has been damaged in that she has been required to expend money and incur obligations for medical services, drugs, and sundries reasonably required in the treatment and relief of the injuries alleged according to proof.  As a further proximate result, Plaintiff will continue to incur medical and related expenses.

94.   The acts of Company Defendants alleged above were willful, wanton, malicious, oppressive, fraudulent, despicable, and outrageous and justify the awarding of exemplary and punitive damages.

### THIRD CAUSE OF ACTION
### (AGAINST DEFENDANT BLATT)
**Sexual Battery**

95.   Plaintiff incorporates herein by reference, as though set forth in full, all preceding Paragraphs of this Complaint.

96.   As described above, Defendant Blatt, without Plaintiff's consent, engaged in sexual misconduct, including sexual assault, against Plaintiff, all with the intent of sexual arousal in violation of Civil Code § 1708.5 and Penal Code § 243.4(e)(1).

97.   Plaintiff is informed and believes and thereon alleges that she will continue to suffer extreme mental, physical, and pain and suffering in the future as a result of the injuries alleged herein.

98.   The acts of Defendant Blatt alleged above were willful, wanton, malicious, oppressive, fraudulent, despicable, and outrageous and justify the awarding of exemplary and punitive damages.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

# FOURTH CAUSE OF ACTION
## (AGAINST DEFENDANT BLATT)
### Gender Violence
### Violation of California Civil Code § 52.4

99.   Plaintiff incorporates herein by reference, as though set forth in full, all preceding Paragraphs of this Complaint.

100.   As described above, Defendant Blatt committed gender violence on Plaintiff, which constituted criminal offenses under California law, including Penal Code § 243.4, sexual battery, which includes the use, attempted use, or threatened use of physical force against a person:

101.   These crimes are at least in part based on the gender of Plaintiff.

102.   Defendant Blatt caused a physical intrusion or a physical invasion of a sexual nature under coercive conditions to Plaintiff's person in that Plaintiff was improperly touched by Defendant Blatt, all without Plaintiff's consent.

103.   The acts of violence as alleged above were directed at Plaintiff because she is a woman.  These acts were intended to humiliate and degrade Plaintiff because she is a woman.  These acts robbed Plaintiff of her dignity.

104.   Plaintiff is informed and believes and thereon alleges that she will continue to suffer extreme mental, physical, and pain and suffering in the future as a result of the injuries alleged herein.

105.   Defendant Blatt's aforementioned conduct was accomplished intentionally and/or recklessly with conscious disregard for Plaintiff's health, safety, privacy, freedom, and human dignity.  The aforementioned conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and should be regarded as despicable, atrocious, and utterly intolerable in a civilized community.  The acts of Defendant Blatt alleged above were willful,

1   wanton, malicious, oppressive, fraudulent, despicable, and outrageous and justify the
2   awarding of exemplary and punitive damages.

3   106.   Plaintiff has also been required to expend attorney fees to pursue their
4   rights under Civil Code § 52.4, and request that she be awarded all attorney fees and
5   costs reasonably required to pursue her claims pursuant to Civil Code § 52.4.

## FIFTH CAUSE OF ACTION
## (AGAINST ALL DEFENDANTS)
### Freedom from Violence Pursuant to The Ralph Act
### Violation of California Civil Code §§ 51.7 and 52

10   107.   Plaintiff incorporates herein by reference, as though set forth in full, all
11   preceding Paragraphs of this Complaint.

12   108.   Defendants subjected, and/or aided and abetted in the subjection of
13   Plaintiff to violence based on her sex, causing physical and psychological injuries to
14   her.  A motivating reason for their conduct was Plaintiff's sex.

15   109.   Plaintiff is informed and believes and thereon alleges that she will
16   continue to suffer extreme mental, physical, and pain and suffering in the future as a
17   result of the injuries alleged herein.

18   110.   Defendants' conduct was a substantial factor in causing Plaintiff's harm.

19   111.   As a result of the aforementioned conduct, Plaintiff is entitled to a
20   $25,000.00 penalty and/or punitive damages for Defendants' conduct in violation of
21   Civil Code § 51.7, as well as attorney's fees and costs pursuant to Civil Code § 52.

22   112.   The aforementioned conduct was accomplished intentionally and/or
23   recklessly with conscious disregard for said Plaintiff's health, safety, privacy,
24   freedom, and human dignity.  Defendants' aforementioned conduct was so
25   outrageous in character and so extreme in degree as to go beyond all possible bounds
26   of decency, and should be regarded as despicable, atrocious, and utterly intolerable in
27   a civilized community.  The acts of Defendants alleged above were willful, wanton,

28

1 | malicious, oppressive, fraudulent, despicable, and outrageous and justify the
2 | awarding of exemplary and punitive damages.

### SIXTH CAUSE OF ACTION
### (AGAINST ALL DEFENDANTS)
#### Negligent Misrepresentation

113. Plaintiff incorporates herein by reference, as though set forth in full, all preceding Paragraphs of this Complaint.

114. All Defendants negligently misrepresented material facts to Plaintiff, namely that Defendants' would conduct a thorough, prompt, and impartial investigation into Defendant Blatt's sexual misconduct and harassment and that she would not suffer any retaliation by Defendants.

115. Defendants negligently misrepresented material facts to Plaintiff, namely that their policies and protocol created an environment where sexual assault is not and will not be tolerated.

116. Defendants made these misrepresentations under circumstances and at a time when they knew or should have known of the falsity of these representations.

117. Defendants made these representations with a reckless disregard for the truth or falsity of such statements and/or with an intent to induce Plaintiff to act on the representations, which, in turn, exposed Plaintiff to harm.

118. Plaintiff's justifiable reliance on Defendants' misrepresentations resulted directly in injury to Plaintiff as described above and such injuries and damages were legally caused by the justifiable reliance upon Defendants' misrepresentations.

119. Plaintiff is therefore entitled to any and all damages resulting from Defendants' negligent misrepresentations that are necessary to make Plaintiff whole, including, but not limited to, all damages, fees, and costs.

## SEVENTH CAUSE OF ACTION

## (AGAINST DEFENDANTS IAC AND MATCH)

### Wrongful Termination in Violation of Public Policy

120.   Plaintiff incorporates herein by reference, as though set forth in full, all preceding Paragraphs of this Complaint.

121.   California law recognizes public policies that employees should be free from termination for reporting illegal activities, refusing to engage in illegal activities and for reporting sexual harassment.  These public policies are embodied in Labor Code §1102.5(b).

122.   Plaintiff was at all relevant times employed by the Company Defendants.  The Company Defendants terminated Plaintiff, in violation of public policy embodied in Labor Code §1102.5(b) and Article I, Section 8, of the California Constitution, for reporting illegal activities and in retaliation for making a good faith complaint about sexual harassment and assault.

123.   As a proximate result of Defendants' wrongful termination of Plaintiff, Plaintiff has sustained and continues to sustain substantial losses in earnings and other employment benefits.

124.   As a proximate result of Defendants' wrongful termination of Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

125.   Plaintiff is informed and believes, and thereupon alleges that Defendants' actions were taken with malice, oppression, fraud, and/or willful and conscious disregard of Plaintiff's rights, and were carried out by Defendants' managing agents and/or ratified by Defendants.  Plaintiff is therefore entitled to punitive damages in an amount to be determined at trial.

## **EIGHT CAUSE OF ACTION**

## **(AGAINST DEFENDANTS IAC AND MATCH)**

### **Retaliation for Engaging in Protected Activity**

126.   Plaintiff incorporates herein by reference, as though set forth in full, all preceding Paragraphs of this Complaint.

127.   California law recognizes public policies that employees should be free from retaliation at the workplace for reporting illegal activities, refusing to engage in illegal activities and for reporting sexual harassment.  These public policies are embodied in Government Code § 12940(h).

128.   Defendants terminated Plaintiff, in retaliation for reporting illegal activities and in retaliation for making a good faith complaint about sexual harassment and assault.  Defendants' conduct, therefore, violated the public policies that are embodied in Government Code § 12940(h) and Article I, Section 8, of the California Constitution.

129.   As a proximate result of Defendants' wrongful termination of Plaintiff, Plaintiff has sustained and continues to sustain substantial losses in earnings and other employment benefits.

130.   As a proximate result of Defendants' wrongful termination of Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

131.   Plaintiff is informed and believes, and thereupon alleges that Defendants' actions were taken with malice, oppression, fraud, and/or willful and conscious disregard of Plaintiff's rights, and were carried out by Defendants' managing agents and/or ratified by Defendants.  Plaintiff is therefore entitled to punitive damages in an amount to be determined at trial.

## VI.    RELIEF REQUESTED

WHEREFORE, Plaintiff prays for judgment against Defendants and, as appropriate to each cause of action alleged and as appropriate to the standing of Plaintiff, as follows:

1.    compensatory damages, including but not limited to, pain, suffering, emotional distress, loss of enjoyment of life, and other non-economic damages in an amount to be determined at trial;

2.    economic damages in the form of medical expenses, out of pocket expenses, lost earnings and earning capacity, and other economic damages in an amount to be determine at trial;

3.    an award of attorneys' fees and costs;

4.    prejudgment interest;

5.    post-judgment interest;

6.    punitive or exemplary damages according to proof; and

7.    for such other and further relief as this Court may deem just and proper.

## VII.   DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all of her claims.

Dated:  August 5, 2019

By:  _Elizabeth Graham_
M. Elizabeth Graham, CA 143085
Paige Alderson
**GRANT & EISENHOFER P.A.**
101 California Street, Suite 2710
San Francisco, California  94111
Phone:  (415) 365-9585
Fax:  (415) 365-9650
Email:  egraham@gelaw.com
Email:  palderson@gelaw.com

28
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

2018-SJ-007-00

**FILED**
Superior Court of California
County of Los Angeles

APR 16 2018

Sherri R. Carter, Executive Officer/Clerk
By_____ Deputy
Stephanie Chung

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

IN RE PERSONAL INJURY ) CASE NO.:
COURT ("PI COURT") PROCEDURES, )
CENTRAL DISTRICT ) STANDING ORDER RE: PERSONAL
(EFFECTIVE APRIL 16, 2018) ) INJURY PROCEDURES, CENTRAL
) DISTRICT
_____ )
                            )

---

**DEPARTMENT:**    2    3    4    5    7

**FINAL STATUS CONFERENCE ("FSC"):**

- **DATE:** _____ AT 10:00 A.M.

**TRIAL:**

- **DATE:** _____ AT 8:30 A.M.

**OSC RE DISMISSAL (CODE CIV. PROC., § 583.210):**

- **DATE:** _____ AT 8:30 A.M.

---

TO EACH PARTY AND TO THE ATTORNEY OF RECORD FOR EACH PARTY:

Pursuant to the California Code of Civil Procedure ("C.C.P."), the California Rules
of Court ("C.R.C.") and the Los Angeles County Court Rules ("Local Rules"), the Los
Angeles Superior Court ("LASC" or "Court") HEREBY AMENDS AND SUPERSEDES
THE AUGUST 10, 2017 SEVENTH AMENDED GENERAL ORDER AND, GENERALLY,
ORDERS AS FOLLOWS IN THIS AND ALL OTHER GENERAL JURISDICTION
PERSONAL INJURY ACTIONS FILED IN THE CENTRAL DISTRICT.

Page 1 of 8

Standing Order Re Personal Injury Procedures, Central District

2018-SJ-007-00

1.    To ensure proper assignment to a PI Court, Plaintiff(s) must carefully fill out the Civil Case Cover Sheet Addendum (form LACIV 109). The Court defines "personal injury" as:

"an unlimited civil case described on the Civil Case Cover Sheet Addendum and Statement of Location (LACIV 109) as Motor Vehicle-Personal Injury/Property Damage/Wrongful Death; Personal Injury/Property Damage/Wrongful Death-Uninsured Motorist; Product Liability (other than asbestos or toxic/environmental); Medical Malpractice-Physicians & Surgeons; Other Professional Health Care Malpractice; Premises Liability; Intentional Bodily Injury/Property Damage/Wrongful Death; or Other Personal Injury/Property Damage/Wrongful Death. An action for intentional infliction of emotional distress, defamation, civil rights/discrimination, or malpractice (other than medical malpractice), is not included in this definition. An action for injury to real property is not included in this definition."   (Local Rule 2.3(a)(1)(A).)

Consistent with Local Rule 2.3(a)(1)(A), the Court will assign a case to the PI Courts if plaintiff(s) check any of the following boxes in the Civil Case Cover Sheet Addendum:

A7100 Motor Vehicle – Personal Injury/Property Damage/Wrongful Death

A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist

A7260 Product Liability (not asbestos or toxic/environmental)

A7210 Medical Malpractice – Physicians & Surgeons

A7240 Medical Malpractice – Other Professional Health Care Malpractice

A7250 Premises Liability (e.g., slip and fall)

A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism etc.)

A7220 Other Personal Injury/Property Damage/Wrongful Death

The Court will not assign cases to the PI Courts if plaintiff(s) check any boxes elsewhere in the Civil Case Cover Sheet Addendum (any boxes on pages two and three of that form).

///

Page 2 of 8

Standing Order Re Personal Injury Procedures, Central District

2018-SJ-007-00

1    The Court sets the above dates in this action in the PI Court circled above (Department

2    2, 3, 4, 5, or 7) at the Spring Street Courthouse, 312 North Spring Street, Los Angeles, CA 90012.

3    (C.R.C. Rules 3.714(b)(3), 3.729.)

4    **FILING OF DOCUMENTS**

5    2.      Parties may file documents in person at the filing window on the first floor of the Stanley

6    Mosk Courthouse (111 N. Hill Street, Los Angeles, CA 90012) or by U.S. Mail or e-Delivery,

7    which is available online at *www.lacourt.org* (link on homepage). Please note that filings are no

8    longer accepted via facsimile and must be filed either in person, via U.S. mail or via e-Delivery.

9    Claims involving an attorney-client fee dispute, documents in which the filing party is a minor,

10   legally incompetent person, or person for whom a conservator has been appointed, requests to

11   waive court fees (FW-001) and requests for accommodations by persons with disabilities (MC-

12   410), may not be filed via e-Delivery.

13   **SERVICE OF SUMMONS AND COMPLAINT**

14   3.      Plaintiff(s) shall serve the summons and complaint in this action upon defendant(s) as

15   soon as possible but no later than three years from the date when the complaint is filed.

16   (C.C.P. § 583.210, subd. (a).)  On the OSC re Dismissal date noted above, the PI Court will

17   dismiss the action and/or all unserved parties unless the plaintiff(s) show cause why the action

18   or the unserved parties should not be dismissed. (C.C.P. §§ 583.250; 581, subd. (b)(4).)

19   4.      The Court sets the above trial and FSC dates on condition that plaintiff(s) effectuate

20   service on defendant(s) of the summons and complaint within six months of filing the complaint.

21   5.      The PI Court will dismiss the case without prejudice pursuant to C.C.P. § 581 when no

22   party appears for trial.

23   **STIPULATIONS TO CONTINUE TRIAL**

24   6.      Provided that all parties agree (and there is no violation of the "five-year rule," C.C.P.

25   § 583.310), the parties may advance or continue any trial date in the PI Courts without showing

26   good cause or articulating any reason or justification for the change.  To continue or advance a

27   trial date, the parties (or their counsel of record) should jointly execute and submit (at the filing

28   window on the first floor of the Stanley Mosk Courthouse, via U.S. mail or via e-Delivery; fee

Page 3 of 8

Standing Order Re Personal Injury Procedures, Central District

1 │ required) a Stipulation to Continue Trial, FSC and Related Motion/Discovery Dates (form

2 │ LACIV CTRL-242, available on the court's website, Personal Injury Court link). The PI Courts

3 │ schedule FSCs for 10:00 a.m., eight (8) court days before the trial date. Parties seeking to

4 │ continue the trial and FSC dates shall file the Stipulation at least eight court days before the FSC

5 │ date. Parties seeking to advance the trial and FSC dates shall file the Stipulation at least eight

6 │ court days before the proposed advanced FSC date. (C.C.P. § 595.2; Gov. Code § 70617, subd.

7 │ (c)(2).) In selecting a new trial date, parties should avoid setting on any Monday, or the Tuesday

8 │ following a court holiday. Parties may submit a maximum of two stipulations to continue trial,

9 │ for a total continuance of six months. Subsequent requests to continue trial will be granted upon

10 │ a showing of good cause by noticed motion. This rule is retroactive so that any previously

11 │ granted stipulation to continue trial will count toward the maximum number of allowed

12 │ continuances.

13 │ **NO CASE MANAGEMENT CONFERENCES**

14 │ 7. The PI Courts do not conduct Case Management Conferences. The parties need not file

15 │ a Case Management Statement.

16 │ **LAW AND MOTION**

17 │ 8. Any documents with declarations and/or exhibits must be tabbed. (C.R.C. Rule

18 │ 3.1110(f).) All deposition excerpts referenced in briefs must be marked on the transcripts

19 │ attached as exhibits. (C.R.C. Rule 3.1116(c).)

20 │ **CHAMBERS COPIES REQUIRED**

21 │ 9. In addition to filing original motion papers at the filing window on the first floor of the

22 │ Stanley Mosk Courthouse, via U.S. mail or via e-Delivery, the parties must deliver, directly to

23 │ the PI Court courtrooms at the Spring Street Courthouse, an extra copy (marked "Chambers

24 │ Copy") of reply briefs and all other motion papers filed less than seven (7) court days before a

25 │ hearing calendared in the PI Courts. The PI Courts also strongly encourage the parties filing and

26 │ opposing lengthy motions, such as motions for summary judgment/adjudication, to submit one

27 │ or more three-ring binders organizing the chambers copy behind tabs.

28 │ ///

2018-SJ-001-00

2018-SJ-007-00

**RESERVATION HEARING DATE**

10.     Parties are directed to reserve hearing dates for motions in the PI Courts using the Court Reservation System (CRS) available online at www.lacourt.org (link on homepage).   After reserving a motion hearing date, the reservation requestor must submit the papers for filing with the reservation receipt (CRS) number printed on the face page of the document under the caption and attach the reservation receipt as the last page.  Parties or counsel who are unable to utilize the online CRS may reserve a motion hearing date by calling the PI Court courtroom, Monday through Friday, between 3:00 p.m. and 4:00 p.m.

**WITHDRAWAL OF MOTIONS**

11.     California Rules of Court, Rule 3.1304(b) requires a moving party to notify the court immediately if a matter will not be heard on the scheduled date. In keeping with that rule, the PI Courts urge parties who amend pleadings in response to demurrers to file amended pleadings before the date when opposition to the demurrer is due so that the PI Courts do not needlessly prepare tentative rulings on demurrers.

*DISCOVERY MOTIONS*

12.     The purpose of an Informal Discovery Conference ("IDC") is to assist the parties to resolve and/or narrow the scope of discovery disputes. Lead trial counsel on each side, or another attorney with full authority to make binding agreements, must attend in person. The PI judges have found that, in nearly every case, the parties amicably resolve disputes with the assistance of the Court.

13.     Parties **must** participate in an IDC **before** a Motion to Compel Further Responses to Discovery will be heard unless the moving party submits evidence, by way of declaration, that the opposing party has failed or refused to participate in an IDC.  Scheduling or participating in an IDC does not automatically extend any deadlines imposed by the Code of Civil Procedure for noticing and filing discovery motions. Ideally, the parties should participate in an IDC before a motion is filed because the IDC may avoid the necessity of a motion or reduce its scope. Because of that possibility, attorneys are encouraged to stipulate to extend the 45 (or 60) day deadline for filing a motion to compel further discovery responses in order to allow time to participate in an

2018-SJ-007-00

1  IDC.

2        If parties do not stipulate to extend the deadlines, the moving party may file the motion
3  to avoid it being deemed untimely.   However, the IDC must take place before the motion is
4  heard so it is suggested that the moving party reserve a date for the motion hearing that is at least
5  60 days after the date when the IDC reservation is made.  Motions to Compel Further Discovery
6  Responses are heard at 10:00 a.m.  If the IDC is not productive, the moving party may advance
7  the hearing on a Motion to Compel Further Discovery Responses on any available hearing date
8  that complies with the notice requirements of the Code of Civil Procedure.

9  14.     Parties are directed to reserve IDC dates in the PI Courts using CRS available online at
10  www.lacourt.org (link on homepage).  Parties are to meet and confer regarding the available
11  dates in CRS prior to accessing the system.  After reserving the IDC date, the reservation
12  requestor must file in the appropriate department and serve an Informal Discovery Conference
13  Form for Personal Injury Courts, from LACIV 239 (revised 12/14 or later), at least 15 court days
14  prior to the conference and attach the CRS reservation receipt as the last page.  The opposing
15  party may file and serve a responsive IDC form, briefly setting forth that party's response, at
16  least 10 court days prior to the IDC.

17  15.     Time permitting, the PI Hub judges may be available to participate in IDCs to try to
18  resolve other types of discovery disputes.

19  **EX PARTE APPLICATIONS**

20  16.     Under the California Rules of Court, courts may only grant *ex parte* relief upon a
21  showing, by admissible evidence, that the moving party will suffer "irreparable harm,"
22  "immediate danger," or where the moving party identifies "a statutory basis for granting relief
23  ex parte." (C.R.C. Rule 3.1202(c).)  The PI Courts have no capacity to hear multiple *ex parte*
24  applications or to shorten time to add hearings to their fully booked motion calendars.  The PI
25  Courts do not regard the Court's unavailability for timely motion hearings as an "immediate
26  danger" or threat of "irreparable harm" justifying *ex parte* relief.  Instead of seeking *ex parte*
27  relief, the moving party should reserve the earliest available motion hearing date (even if it is
28  after the scheduled trial date) and should file a motion to continue trial.  Parties should also check

Standing Order Re Personal Injury Procedures, Central District

2018-SJ-007-00

1  the Court Reservation System from time to time because earlier hearing dates may become
2  available as cases settle or hearings are taken off calendar.
3  **REQUEST FOR TRANSFER TO INDEPENDENT CALENDAR DEPARTMENT**
4  17.    Parties seeking to transfer a case from a PI Court to an Independent Calendar ("I/C")
5  Court shall file (at the filing window on the first floor of the Stanley Mosk Courthouse, via U.S.
6  mail or via e-Delivery) and serve the Court's "Motion to Transfer Complicated Personal Injury
7  Case to Independent Calendar Court" (form LACIV 238, available on the Court's website under
8  the PI Courts link).   The PI Courts will transfer a matter to an I/C Court if the case is not a
9  "Personal Injury" case as defined in this Order, or if it is "complicated."  In determining whether
10  a personal injury case is "complicated" the PI Courts will consider, among other things, the
11  number of pretrial hearings or the complexity of issues presented.
12  18.    Parties opposing a motion to transfer have five court days to file (at the filing window
13  on the first floor of the Stanley Mosk Courthouse, via U.S. mail or via e-Delivery) an Opposition
14  (using the same LACIV 238 Motion to Transfer form).
15  19.    The PI Courts will not conduct a hearing on any Motion to Transfer to I/C Court.
16  Although the parties may stipulate to transfer a case to an Independent Calendar Department, the
17  PI Courts will make an independent determination whether to transfer the case or not.
18  **FINAL STATUS CONFERENCE**
19  20.    Parties shall comply with the requirements of the PI Courts' "First Amended Standing
20  Order Re Final Status Conference," which shall be served with the summons and complaint.
21  **JURY FEES**
22  21.    Parties must pay jury fees no later than 365 calendar days after the filing of the initial
23  complaint. (C. C. P. § 631, subds. (b) and (c).)
24  **JURY TRIALS**
25  22.    The PI Courts do not conduct jury trials.  On the trial date, a PI Court will contact the
26  Master Calendar Court, Department One, in the Stanley Mosk Courthouse.  Department One
27  will assign cases out for trial to dedicated Civil Trial Courtrooms and designated Criminal
28  Courtrooms.

2018-SJ-007-00

1  SANCTIONS

2  23.    The Court has discretion to impose sanctions for any violation of this general order.

3  (C.C.P. §§ 128.7, 187 and Gov. Code, § 68608, subd. (b).)

4

5

6  Dated: *April 16, 2018*          *Debre K Weintraub*

7                                   Debre K. Weintraub
                                    Supervising Judge of Civil Courts
8                                   Los Angeles Superior Court

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Page 8 of 8

2018-SJ-006-00

**FILED**
Superior Court of California
County of Los Angeles

**APR 16 2018**

Sherri R. Carter, Executive Officer/Clerk

By_____ Deputy
Stephanie Chung

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES -- CENTRAL DISTRICT

| | |
|---|---|
| In re Personal Injury Cases Assigned To the Personal Injury Courts (Departments 2, 3, 4, 5 and 7 of the Spring Street Courthouse) | FIRST AMENDED STANDING ORDER -- RE: FINAL STATUS CONFERENCE, PERSONAL INJURY ("PI") COURTS (Effective as of April 16, 2018) |

The dates for Trial and Final Status Conference ("FSC") having been set in this matter, the Court HEREBY AMENDS AND SUPERSEDES ITS JANUARY 2, 2018 STANDING ORDER--RE: FINAL STATUS CONFERENCE, PERSONAL INJURY ("PI") COURTS AND, GENERALLY, ORDERS AS FOLLOWS IN THIS AND ALL OTHER GENERAL JURISDICTION PERSONAL INJURY ACTIONS:

**1.    PURPOSE OF THE FSC**

The purpose of the FSC is to verify that the parties/counsel are completely ready to proceed with trial continuously and efficiently, from day to day, until verdict.  The PI Courts will verify at the FSC that all parties/counsel have (1) prepared the Exhibit binders and Trial Document binders and (2) met and conferred in an effort to stipulate to ultimate facts, legal issues, motions in limine, and the authentication and admissibility of exhibits.

///

///

2.   **TRIAL DOCUMENTS TO BE FILED**

At least five calendar days prior to the Final Status Conference, the parties/counsel shall serve and file (in Room 102 of the Stanley Mosk Courthouse or by e-Delivery) the following Trial Readiness Documents:

A.   **TRIAL BRIEFS (OPTIONAL)**

Each party/counsel may file, but is not required to file, a trial brief succinctly identifying:

(1) the claims and defenses subject to litigation;

(2) the major legal issues (with supporting points and authorities);

(3) the relief claimed and calculation of damages sought; and

(4) any other information that may assist the court at trial.

B.   **MOTIONS IN LIMINE**

Before filing motions in limine, the parties/counsel shall comply with the statutory notice provisions of Code of Civil Procedure ("C.C.P.") Section 1005 and the requirements of Los Angeles County Court Rule ("Local Rule") 3.57(a).  The caption of each motion in limine shall concisely identify the evidence that the moving party seeks to preclude.  Parties filing more than one motion in limine shall number them consecutively. Parties filing opposition and reply papers shall identify the corresponding motion number in the caption of their papers.

C.   **JOINT STATEMENT TO BE READ TO THE JURY**

For jury trials, the parties/counsel shall work together to prepare and file a joint written statement of the case for the court to read to the jury.  Local Rule 3.25(g)(4).

D.   **JOINT WITNESS LIST**

The parties/counsel shall work together to prepare and file a joint list of all witnesses in alphabetical order by last name that each party intends to call (excluding impeachment and rebuttal witnesses).  Local Rule 3.25(g)(5).  The joint witness list shall identify each witness by name, specify which witnesses are experts, and estimate the length of the direct, cross examination and re-direct examination (if any) of each witness.  The

1  parties/counsel shall identify all potential witness scheduling issues and special

2  requirements. Any party/counsel who seeks to elicit testimony from a witness not identified

3  on the witness list must first make a showing of good cause to the trial court.

4          E.     **LIST OF PROPOSED JURY INSTRUCTIONS**

5                 **(JOINT AND CONTESTED)**

6          The parties/counsel shall jointly prepare and file a list of proposed jury

7  instructions, organized in numerical order, specifying the instructions upon which all sides

8  agree and the contested instructions, if any. The List of Proposed Jury Instructions must

9  include a space by each instruction for the judge to indicate whether the instruction was

10  given.

11          F.     **JURY INSTRUCTIONS**

12                 **(JOINT AND CONTESTED)**

13          The parties/counsel shall prepare a complete set of full-text proposed jury

14  instructions, editing all proposed California Civil Jury Instructions ("CACI") and insert party

15  name(s) and eliminate blanks and irrelevant material. The parties/counsel shall prepare

16  special instructions in a format ready for submission to the jury with the instruction number,

17  title, and text only (i.e., there should be no boxes or other indication on the printed

18  instruction itself as to the requesting party).

19          G.     **JOINT VERDICT FORM(S)**

20          The parties/counsel shall prepare and jointly file a proposed general verdict

21  form or special verdict form (with interrogatories) acceptable to all sides. Local Rule

22  3.25(g)(8). If the parties/counsel cannot agree on a joint verdict form, each party must

23  separately file a proposed verdict form.

24          H.     **JOINT EXHIBIT LIST**

25          The parties/counsel shall prepare and file a joint exhibit list organized with

26  columns identifying each exhibit and specifying each party's evidentiary objections, if any, to

27  admission of each exhibit. The parties/counsel shall meet and confer in an effort to resolve

28  objections to the admissibility of each exhibit.

## I.     PAGE AND LINE DESIGNATION FOR
## DEPOSITION AND FORMER TESTIMONY

If the parties/counsel intend to use deposition testimony or former trial testimony in lieu of any witness's live testimony, the parties/counsel shall meet and confer and jointly prepare and file a chart with columns for each of the following:  1) the line and page designations of the deposition or former testimony requested for use, 2) objections, 3) counter-designations, 4) any responses thereto, and 5) the Court's ruling.

### 3.     EVIDENTIARY EXHIBITS

The parties/counsel shall jointly prepare (and be ready to temporarily lodge for inspection at the FSC) three sets of tabbed, internally paginated by document, and properly-marked exhibits, organized numerically in three-ring binders (a set for the Court, the Judicial Assistant and the witnesses).  The parties/counsel shall mark all non-documentary exhibits and insert a simple written description of the exhibit behind the corresponding numerical tab in the exhibit binder.  If the parties have a joint signed exhibit list and electronic copies of their respective exhibits, then the parties/counsel will not be required to produce exhibit binders at the FSC.  However, the exhibit binders may be required by the assigned trial judge when the trial commences.  In the absence of either a joint signed exhibit list or electronic copies, exhibit binders will be required by all parties/counsel at the FSC.

### 4.     TRIAL BINDERS REQUIRED IN THE PI COURTS

The parties/counsel shall jointly prepare (and be ready to temporarily lodge and include the following for inspection at the FSC) the Trial Documents consisting of conformed copies, tabbed and organized into three-ring binders with a table of contents that includes the following:

Tab A:     Trial Briefs (Optional)

Tab B:     Motions in Limine

Tab C:     Joint Statement to Be Read to the Jury

Tab D:     Joint Witness List

///

FIRST AMENDED ORDER RE FINAL STATUS CONFERENCE, PERSONAL INJURY COURTS (Effective April 16, 2018)

1        Tab E:      Joint List of Jury Instructions (identifying the agreed upon and

2  contested instructions)

3        Tab F:      Joint and Contested Jury Instructions

4        Tab G:      Joint and/or Contested Verdict Form(s)

5        Tab H:      Joint Exhibit List

6        Tab I:      Joint Chart of Page and Line Designation(s) for Deposition and Former

7  Testimony

8        Tab J:      Copies of the Current Operative Pleadings (including the operative

9  complaint, answer, cross-complaint, if any, and answer to any cross-complaint).

10       The parties/counsel shall organize motions in limine (tabbed in numerical order)

11 behind Tab B with the opposition papers and reply papers for each motion placed directly

12 behind the moving papers.  The parties shall organize proposed jury instructions behind

13 Tab F, with the agreed upon instructions first in order followed by the contested instructions

14 (including special instructions) submitted by each side.

15       **5.     FAILURE TO COMPLY WITH FSC OBLIGATIONS**

16       The court has discretion to require any party/counsel who fails or refuses to comply

17 with this Amended Standing Order to show cause why the Court should not impose

18 monetary, evidentiary and/or issue sanctions (including the entry of a default or the striking

19 of an answer).

20

21

22 Dated: April 16, 2018

                                     Debre K. Weintraub

23                                      Supervising Judge, Civil

24                                        Los Angeles Superior Court

25

26

27

28



# Superior Court of California, County of Los Angeles

<div style="border:1px solid">

## ALTERNATIVE DISPUTE RESOLUTION (ADR)
## INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

</div>

### What is ADR?

ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration and settlement conferences. When ADR is done by phone or computer, it may be called Online Dispute Resolution (ODR). These "alternatives" to litigation and trial are described below.

### Advantages of ADR

- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees and witness fees.
- **Keeps Control** with the parties: Parties choose their ADR process and provider for voluntary ADR.
- **Reduces stress/protects privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

### Disadvantages of ADR

- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR and litigation and trial.
- **No Public Trial:** ADR does not provide a public trial or a decision by a judge or jury.

### Main Types of ADR:

1. **Negotiation:** Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:** In mediation, a neutral "mediator" listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all. Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   **Mediation may not be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

LASC CIV 271 NEW 03/19
For Mandatory Use
California Rules of Court, rule 3.221

**How to arrange mediation in Los Angeles County**

Mediation for civil cases is voluntary and parties may select any mediator they wish. Options include:

a. **The Civil Mediation Vendor Resource List**
   Parties may contact these organizations to request a "Resource List Mediation" for reduced-cost or free (for selected cases) mediation in person or with ODR (by phone or online).

   - JAMS, Inc.: Case Manager (213) 253-9776 mdawson@jamsadr.com
   - Mediation Center of Los Angeles: Case Manager: (833) 476-9145 info@mediationLA.org

   These organizations cannot accept every case and they may decline cases at their discretion.
   Visit www.lacourt.org/ADR.Res.List for important information and FAQs before contacting them.
   NOTE: This service is not available for family law, probate or small claims.

b. **Los Angeles County Dispute Resolution Programs**
   https://wdacs.lacounty.gov/programs/drp/
   - Free, day-of-trial mediations at the courthouse for small claims, unlawful detainers (evictions) and, at the Stanley Mosk Courthouse, limited civil. No appointment needed.
   - Free or low-cost mediations before the day of trial for these and other case types.
   - For ODR by phone or computer for small claims or unlawful detainer (eviction) cases before the day of trial, visit
     http://www.lacourt.org/division/smallclaims/pdf/OnlineDisputeResolutionFlyer-EngSpan.pdf

c. **Mediators and ADR and Bar organizations** that provide mediation may be found on the internet.

3. **Arbitration**: Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision. For more information about arbitration, visit http://www.courts.ca.gov/programs-adr.htm

4. **Mandatory Settlement Conferences (MSC)**: MSCs are ordered by the Court and are often held close to the trial date. The parties and their attorneys meet with a judge or settlement officer who does not make a decision but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For information about the Court's MSC programs for civil cases, visit: www.lacourt.org/division/civil/settlement

**Los Angeles Superior Court ADR website:** www.lacourt.org/division/civil/settlement
**For general information and videos about ADR, visit** http://www.courts.ca.gov/programs-adr.htm

LASC2

2019-GEN-014-00

**FILED**
Superior Court of California
County of Los Angeles

**MAY 03 2019**

Sherri R. Carter, Executive Officer/Clerk

By _____, Deputy
Rizalinda Mina

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

IN RE LOS ANGELES SUPERIOR COURT )     FIRST AMENDED GENERAL ORDER
— MANDATORY ELECTRONIC FILING    )
FOR CIVIL                        )
                                 )
                                 )
                                 )
_____)

On December 3, 2018, the Los Angeles County Superior Court mandated electronic filing of all documents in Limited Civil cases by litigants represented by attorneys. On January 2, 2019, the Los Angeles County Superior Court mandated electronic filing of all documents filed in Non-Complex Unlimited Civil cases by litigants represented by attorneys. (California Rules of Court, rule 2.253(b).) All electronically filed documents in Limited and Non-Complex Unlimited cases are subject to the following:

1) DEFINITIONS

a) **"Bookmark"** A bookmark is a PDF document navigational tool that allows the reader to quickly locate and navigate to a designated point of interest within a document.

b) **"Efiling Portal"** The official court website includes a webpage, referred to as the efiling portal, that gives litigants access to the approved Electronic Filing Service Providers.

c) **"Electronic Envelope"** A transaction through the electronic service provider for submission of documents to the Court for processing which may contain one or more PDF documents attached.

d) **"Electronic Filing"** Electronic Filing (eFiling) is the electronic transmission to a Court of a document in electronic form. (California Rules of Court, rule 2.250(b)(7).)

1

FIRST AMENDED GENERAL ORDER RE MANDATORY ELECTRONIC FILING FOR CIVIL

e) **"Electronic Filing Service Provider"**  An Electronic Filing Service Provider (EFSP) is a person or entity that receives an electronic filing from a party for retransmission to the Court. In the submission of filings, the EFSP does so on behalf of the electronic filer and not as an agent of the Court.  (California Rules of Court, rule 2.250(b)(8).)

f) **"Electronic Signature"**  For purposes of these local rules and in conformity with Code of Civil Procedure section 17, subdivision (b)(3), section 34, and section 1010.6, subdivision (b)(2), Government Code section 68150, subdivision (g), and California Rules of Court, rule 2.257, the term "Electronic Signature" is generally defined as an electronic sound, symbol, or process attached to or logically associated with an electronic record and executed or adopted by a person with the intent to sign the electronic record.

g) **"Hyperlink"**  An electronic link providing direct access from one distinctively marked place in a hypertext or hypermedia document to another in the same or different document.

h) **"Portable Document Format"**  A digital document format that preserves all fonts, formatting, colors and graphics of the original source document, regardless of the application platform used.

2) MANDATORY ELECTRONIC FILING

a) Trial Court Records

Pursuant to Government Code section 68150, trial court records may be created, maintained, and preserved in electronic format.  Any document that the Court receives electronically must be clerically processed and must satisfy all legal filing requirements in order to be filed as an official court record (California Rules of Court, rules 2.100, et seq. and 2.253(b)(6)).

b) Represented Litigants

Pursuant to California Rules of Court, rule 2.253(b), represented litigants are required to electronically file documents with the Court through an approved EFSP.

c) Public Notice

The Court has issued a Public Notice with effective dates the Court required parties to electronically file documents through one or more approved EFSPs.  Public Notices containing effective dates and the list of EFSPs are available on the Court's website, at www.lacourt.org.

d) Documents in Related Cases

Documents in related cases must be electronically filed in the eFiling portal for that case type if electronic filing has been implemented in that case type, regardless of whether the case has been related to a Civil case.

3) EXEMPT LITIGANTS

a) Pursuant to California Rules of Court, rule 2.253(b)(2), self-represented litigants are exempt from mandatory electronic filing requirements.

b) Pursuant to Code of Civil Procedure section 1010.6, subdivision (d)(3) and California Rules of Court, rule 2.253(b)(4), any party may make application to the Court requesting to be excused from filing documents electronically and be permitted to file documents by conventional means if the party shows undue hardship or significant prejudice.

4) EXEMPT FILINGS

a) The following documents shall not be filed electronically:

i)   Peremptory Challenges or Challenges for Cause of a Judicial Officer pursuant to Code of Civil Procedure sections 170.6 or 170.3;

ii)  Bonds/Undertaking documents;

iii) Trial and Evidentiary Hearing Exhibits

iv)  Any ex parte application that is filed concurrently with a new complaint including those that will be handled by a Writs and Receivers department in the Mosk courthouse; and

v)   Documents submitted conditionally under seal. The actual motion or application shall be electronically filed. A courtesy copy of the electronically filed motion or application to submit documents conditionally under seal must be provided with the documents submitted conditionally under seal.

b) Lodgments

Documents attached to a Notice of Lodgment shall be lodged and/or served conventionally in paper form. The actual document entitled, "Notice of Lodgment," shall be filed electronically.

//

//

2019-GEN-014-00

5) ELECTRONIC FILING SYSTEM WORKING PROCEDURES

Electronic filing service providers must obtain and manage registration information for persons and entities electronically filing with the court.

6) TECHNICAL REQUIREMENTS

a) Electronic documents must be electronically filed in PDF, text searchable format **when** technologically feasible without impairment of the document's image.

b) The table of contents for any filing must be bookmarked.

c) Electronic documents, including but not limited to, declarations, proofs of service, and exhibits, must be bookmarked within the document pursuant to California Rules of Court, rule 3.1110(f)(4). Electronic bookmarks must include links to the first page of each bookmarked item (e.g. exhibits, declarations, deposition excerpts) and with bookmark titles that identify the bookedmarked item and briefly describe the item.

d) Attachments to primary documents must be bookmarked. Examples include, but are not limited to, the following:

    i)    Depositions;

    ii)   Declarations;

    iii)  Exhibits (including exhibits to declarations);

    iv)  Transcripts (including excerpts within transcripts);

    v)   Points and Authorities;

    vi)  Citations; and

    vii)  Supporting Briefs.

e) Use of hyperlinks within documents (including attachments and exhibits) is strongly encouraged.

f) Accompanying Documents

Each document acompanying a single pleading must be electronically filed as a **separate** digital PDF document.

g) Multiple Documents

Multiple documents relating to one case can be uploaded in one envelope transaction.

h) Writs and Abstracts

Writs and Abstracts must be submitted as a separate electronic envelope.

i) Sealed Documents

If and when a judicial officer orders documents to be filed under seal, those documents must be filed electronically (unless exempted under paragraph 4); the burden of accurately designating the documents as sealed at the time of electronic submission is the submitting party's responsibility.

j) Redaction

Pursuant to California Rules of Court, rule 1.201, it is the submitting party's responsibility to redact confidential information (such as using initials for names of minors, using the last four digits of a social security number, and using the year for date of birth) so that the information shall not be publicly displayed.

7) ELECTRONIC FILING SCHEDULE

a) Filed Date

i) Any document received electronically by the court between 12:00 am and 11:59:59 pm shall be deemed to have been effectively filed on that court day if accepted for filing. Any document received electronically on a non-court day, is deemed to have been effectively filed on the next court day if accepted.   (California Rules of Court, rule 2.253(b)(6); Code Civ. Proc. § 1010.6(b)(3).)

ii) Notwithstanding any other provision of this order, if a digital document is not filed in due course because of: (1) an interruption in service; (2) a transmission error that is not the fault of the transmitter; or (3) a processing failure that occurs after receipt, the Court may order, either on its own motion or by noticed motion submitted with a declaration for Court consideration, that the document be deemed filed and/or that the document's filing date conform to the attempted transmission date.

8) EX PARTE APPLICATIONS

a) Ex parte applications and all documents in support thereof must be electronically filed no later than 10:00 a.m. the court day before the ex parte hearing.

2019-GEN-014-00

b) Any written opposition to an ex parte application must be electronically filed by 8:30 a.m. the day of the ex parte hearing. A printed courtesy copy of any opposition to an ex parte application must be provided to the court the day of the ex parte hearing.

9) PRINTED COURTESY COPIES

a) For any filing electronically filed two or fewer days before the hearing, a courtesy copy must be delivered to the courtroom by 4:30 p.m. the same business day the document is efiled. If the efiling is submitted after 4:30 p.m., the courtesy copy must be delivered to the courtroom by 10:00 a.m. the next business day.

b) Regardless of the time of electronic filing, a printed courtesy copy (along with proof of electronic submission) is required for the following documents:

   i) Any printed document required pursuant to a Standing or General Order;

   ii) Pleadings and motions (including attachments such as declarations and exhibits) of 26 pages or more;

   iii) Pleadings and motions that include points and authorities;

   iv) Demurrers;

   v) Anti-SLAPP filings, pursuant to Code of Civil Procedure section 425.16;

   vi) Motions for Summary Judgment/Adjudication; and

   vii) Motions to Compel Further Discovery.

c) Nothing in this General Order precludes a Judicial Officer from requesting a courtesy copy of additional documents. Courtroom specific courtesy copy guidelines can be found at www.lacourt.org on the Civil webpage under "Courtroom Information."

10) WAIVER OF FEES AND COSTS FOR ELECTRONICALLY FILED DOCUMENTS

a) Fees and costs associated with electronic filing must be waived for any litigant who has received a fee waiver. (California Rules of Court, rules 2.253(b)(), 2.258(b), Code Civ. Proc. § 1010.6(d)(2).)

b) Fee waiver applications for waiver of court fees and costs pursuant to Code of Civil Procedure section 1010.6, subdivision (b)(6), and California Rules of Court, rule 2.252(f), may be electronically filed in any authorized action or proceeding.

1    11) SIGNATURES ON ELECTRONIC FILING

2        For purposes of this General Order, all electronic filings must be in compliance with California

3        Rules of Court, rule 2.257.  This General Order applies to documents filed within the Civil

4        Division of the Los Angeles County Superior Court.

5

6            This First Amended General Order supersedes any previous order related to electronic filing,

7    and is effective immediately, and is to remain in effect until otherwise ordered by the Civil

8    Supervising Judge and/or Presiding Judge.

9

10   DATED:  May 3, 2019

     KEVIN C. BRAZILE
11                                              Presiding Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Spring Street Courthouse<br>312 North Spring Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>**08/05/2019**<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ Romunda Clifton _____ Deputy |
| **NOTICE OF CASE ASSIGNMENT**<br><br>**UNLIMITED CIVIL CASE** | |
| Your case is assigned for all purposes to the judicial officer indicated below. | CASE NUMBER:<br>19STCV27416 |

## THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|
| ✓ | Stephen I. Goorvitch | 5 | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on 08/06/2019
(Date)

Sherri R. Carter, Executive Officer / Clerk of Court

By Romunda Clifton _____ , Deputy Clerk

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

CM-010

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>M. Elizabeth Graham, State Bar # 143085<br>GRANT & EISENHOFER P.A.<br>101 California Street, Suite 2710<br>San Francisco, CA 94111<br>TELEPHONE NO.: (415) 365-9585      FAX NO.:<br>ATTORNEY FOR *(Name):* Plaintiff | **FOR COURT USE ONLY** |

| |
|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF** LOS ANGELES<br>STREET ADDRESS: Stanley Mosk Courthouse, 111 N. Hill Street<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Los Angeles, CA 90012<br>BRANCH NAME: |

| |
|---|
| CASE NAME:<br>Rosette Pambakian v. Gregory Blatt, et al. |

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ☑ **Unlimited**<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ **Limited**<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☑ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition *(not specified above)* (43)

2. This case ☐ is   ☑ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties      d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel      e. ☐ Coordination with related actions pending in one or more courts issues that will be time-consuming to resolve      in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence      f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action *(specify):* 8
5. This case ☐ is   ☑ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: August 5, 2019

M. Elizabeth Graham
_____
(TYPE OR PRINT NAME)        ▶ *[signature]* Elizabeth Graham
        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

American LegalNet, Inc.
www.FormsWorkflow.com

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
   Damage/Wrongful Death
Uninsured Motorist (46) *(if the
   case involves an uninsured
   motorist claim subject to
   arbitration, check this item
   instead of Auto)*
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
   Asbestos Property Damage
   Asbestos Personal Injury/
     Wrongful Death
Product Liability *(not asbestos or
   toxic/environmental)* (24)
Medical Malpractice (45)
   Medical Malpractice–
     Physicians & Surgeons
   Other Professional Health Care
     Malpractice
Other PI/PD/WD (23)
   Premises Liability (e.g., slip
     and fall)
   Intentional Bodily Injury/PD/WD
     (e.g., assault, vandalism)
   Intentional Infliction of
     Emotional Distress
   Negligent Infliction of
     Emotional Distress
   Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
   Practice (07)
Civil Rights (e.g., discrimination,
   false arrest) *(not civil
   harassment)* (08)
Defamation (e.g., slander, libel)
   (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
   Legal Malpractice
   Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
   Breach of Rental/Lease
    Contract *(not unlawful detainer
    or wrongful eviction)*
   Contract/Warranty Breach–Seller
    Plaintiff *(not fraud or negligence)*
   Negligent Breach of Contract/
    Warranty
   Other Breach of Contract/Warranty
Collections (e.g., money owed, open
   book accounts) (09)
   Collection Case–Seller Plaintiff
   Other Promissory Note/Collections
    Case
Insurance Coverage *(not provisionally
   complex)* (18)
   Auto Subrogation
   Other Coverage
Other Contract (37)
   Contractual Fraud
   Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
   Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
   Writ of Possession of Real Property
   Mortgage Foreclosure
   Quiet Title
   Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
   drugs, check this item; otherwise,
   report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
   Writ–Administrative Mandamus
   Writ–Mandamus on Limited Court
    Case Matter
   Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
   Review of Health Officer Order
   Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
   *(arising from provisionally complex
   case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
   Abstract of Judgment (Out of
    County)
   Confession of Judgment *(non-
    domestic relations)*
   Sister State Judgment
   Administrative Agency Award
    *(not unpaid taxes)*
   Petition/Certification of Entry of
    Judgment on Unpaid Taxes
   Other Enforcement of Judgment
    Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
   above)* (42)
   Declaratory Relief Only
   Injunctive Relief Only *(non-
    harassment)*
   Mechanics Lien
   Other Commercial Complaint
    Case *(non-tort/non-complex)*
   Other Civil Complaint
    *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
   Governance (21)
Other Petition *(not specified
   above)* (43)
   Civil Harassment
   Workplace Violence
   Elder/Dependent Adult
    Abuse
   Election Contest
   Petition for Name Change
   Petition for Relief From Late
    Claim
   Other Civil Petition

**CIVIL CASE COVER SHEET**

| SHORT TITLE: ROSETTE PAMBAKIAN V. GERGORY BLATT, et al. | CASE NUMBER |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

> **This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

> **Applicable Reasons for Choosing Court Filing Location (Column C)**

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage<br>☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11<br>1, 11 |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons<br>☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11<br>1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall)<br>☒ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.)<br>☐ A7270  Intentional Infliction of Emotional Distress<br>☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11<br>1, 4, ⑪<br>1, 4, 11<br>1, 4, 11 |

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 1 of 4

| SHORT TITLE: ROSETTE PAMBAKIAN V. GERGORY BLATT, et al. | CASE NUMBER |
|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☑ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation          Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032  Quiet Title | 2, 6 |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 2 of 4

| SHORT TITLE: ROSETTE PAMBAKIAN V. GERGORY BLATT, et al. | | CASE NUMBER | |
|---|---|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims<br>from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement<br>of Judgment (20) | ☐ A6141  Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160  Abstract of Judgment | 2, 6 |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints<br>(Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not<br>Specified Above) (43) | ☐ A6121  Civil Harassment With Damages | 2, 3, 9 |
| | | ☐ A6123  Workplace Harassment With Damages | 2, 3, 9 |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case With Damages | 2, 3, 9 |
| | | ☐ A6190  Election Contest | 2 |
| | | ☐ A6110  Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100  Other Civil Petition | 2, 9 |

**CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION**

| SHORT TITLE: ROSETTE PAMBAKIAN V. GERGORY BLATT, et al. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address**: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected.  Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: | ADDRESS: |
|---|---|
| ☐ 1. ☐ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☑ 11. | 465 S La Cienega Blvd |

| CITY: | STATE: | ZIP CODE: | |
|---|---|---|---|
| LOS ANGELES | CA | 90048 | |

**Step 5: Certification of Assignment**: I certify that this case is properly filed in the CENTRAL DISTRICT _____ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: AUGUST 5, 2019

*Elizabeth Gilbert*
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1.  Original Complaint or Petition.

2.  If filing a Complaint, a completed Summons form for issuance by the Clerk.

3.  Civil Case Cover Sheet, Judicial Council form CM-010.

4.  Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5.  Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6.  A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7.  Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 4 of 4