UNITED STATES DISTRICT COURT                    JS-6
CENTRAL DISTRICT OF CALIFORNIA
<u>CIVIL MINUTES—GENERAL</u>

**Case No.** CV 19-7053-MWF (FFMx)              **Date:** **December 20, 2019**
Title:    Rosette Pambakian v. Gregory Blatt et al.

Present:  <u>The Honorable MICHAEL W. FITZGERALD, U.S. District Judge</u>

          Deputy Clerk:                    Court Reporter:
          Rita Sanchez                     Not Reported

          Attorneys Present for Plaintiff:  Attorneys Present for Defendant:
          None Present                       None Present

**Proceedings (In Chambers):**       ORDER RE: DEFENDANTS' MOTION TO
                                     COMPEL ARBITRATION [30]

        Before the Court is Defendants Gregory Blatt, IAC/InterActiveCorp ("IAC"),
and Match Group, Inc.'s ("Match") Motion to Compel Arbitration (the "Motion"),
filed on August 28, 2019.  (Docket No. 30).  On September 25, 2019, Plaintiff Rosette
Pambakian filed an Opposition.  (Docket No. 45).  On October 18, 2019, Defendants
filed a Reply.  (Docket No. 49).

        The Court has read and considered the papers filed in connection with the
motions, and held a hearing on November 4, 2019.

        For the reasons discussed below, the Motion is **GRANTED**.  Plaintiff's claims
fall within the scope of the arbitration agreement.  Moreover, the arbitration agreement
is not unconscionable, Defendants have not materially breached the agreement, and
they have not waived the right to enforce arbitration.

## I.    <u>BACKGROUND</u>

        Plaintiff commenced this action in the Los Angeles County Superior Court on
August 5, 2019.  (*See* Notice of Removal ("NoR"), Ex. A ("Complaint") (Docket No.
1-1)).  On August 13, 2019, Defendants timely removed this action, invoking this
Court's diversity jurisdiction.  (*See* NoR at 3 (Docket No. 1)).

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  CV 19-7053-MWF (FFMx)          Date:  December 20, 2019

Title:      Rosette Pambakian v. Gregory Blatt et al.

### A.    Plaintiff's Claims

The Complaint contains the following allegations:

Plaintiff is a marketing executive, who joined Tinder in 2014 as the Head of Communications.  (Compl. ¶ 1).  Plaintiff has been credited as an integral part of Tinder's success and her career was on the rise until she was sexually assaulted by Defendant Blatt.  (*Id.* ¶ 2).

Defendant Match owned Tinder from March 11, 2013 until July 13, 2017, when Match merged Tinder into itself.  (*Id.* ¶ 7).  IAC owns or controls Match.  (*Id.* ¶ 9).  During all the events described below, Defendant Blatt was the CEO and Chairman of Match and the CEO of Tinder.  (*Id.* ¶ 14).  Blatt was also Plaintiff's boss.  (*Id.* ¶ 20).

On December 9, 2016, Tinder held its holiday part at the SLS Hotel in Los Angeles, California.  (*Id.* ¶ 15).  Plaintiff attended the party.  (*Id.*).  At the party, Blatt harassed and sexually assaulted her.  (*Id.* ¶¶ 16-19).  Two days after the assault, Blatt called Plaintiff into his office and apologized for his actions on the night of the holiday party.  (*Id.* ¶ 23).

Between December 2016 and April 2017, Plaintiff discussed the sexual assault with various IAC and Match employees in Human Resources and Legal teams.  (*Id.* ¶¶ 37-42).  Despite their assurances of confidentiality and privacy, they shared the information Plaintiff shared with them with Blatt.  (*Id.* ¶ 41).  Plaintiff eventually texted Chief Human Resources Officer Lisa Nelson that she did not feel comfortable talking further about what happened until she consulted with a lawyer.  (*Id.* ¶ 42).  After this text, Plaintiff was no longer contacted as part of the investigation.  (*Id.* ¶ 43).

On April 28, 2017, Blatt exercised approximately 5 million stock options in Match Group, realizing over $44 million in value.  (*Id.* ¶ 36).  Plaintiff alleges on information and belief that this occurred approximately one day after another employee reported Blatt's sexual assault to IAC and Match executives.  (*Id.*).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.  CV 19-7053-MWF (FFMx)** | **Date:  December 20, 2019** |
| Title:     Rosette Pambakian v. Gregory Blatt et al. | |

In or around October 2017, Defendants asked Plaintiff to sign a non-disclosure/disparagement agreement ("NDA") concerning the sexual assault and investigation in exchange for increased compensation. (*Id.* ¶ 48). Plaintiff declined to sign. (*Id.*). After declining to sign the NDA, Plaintiff became aware that Blatt was going to resign as Tinder CEO. (*Id.* ¶ 49). Even after resigning, Blatt continued to "check in" on Plaintiff to ensure she would not speak out publicly. (*Id.* ¶ 50).

Through their actions and inaction, Match and IAC violated their own internal policies, including the Code of Ethics and harassment policy. (*Id.* ¶¶ 51-56). Instead of following their stated policies, they engaged in a "sham investigation" to conceal and discredit the sexual assault suffered by Plaintiff. (*Id.*).

On August 14, 2018, Plaintiff filed a different lawsuit with several others regarding the valuation of her stock options. (*Id.* ¶ 60). The lawsuit alleged in part that when Plaintiff's assault was reported to IAC and Match executives, they failed to properly investigate and take timely corrective action against Blatt. (*Id.*). The suit also alleged that Match and IAC failed to act because they needed Blatt, who was the lynchpin in IAC and Match's scheme to undervalue Tinder and decrease the amount Plaintiff and her fellow Tinder stock holders would receive in exercising their stock options by billions of dollars. (*Id.*). The next day, IAC and Match placed Plaintiff on leave. (*Id.* ¶ 61).

On December 18, 2018, Plaintiff received notice via e-mail that Tinder was terminating her employment. (*Id.* ¶ 63). On information and belief, Plaintiff alleges that Defendants terminated her in retaliation for speaking out against Blatt for his sexual misconduct and for participating in a lawsuit against IAC and Match related to her stock options. (*Id.*).

Plaintiff also alleges that Defendants promoted a misogynistic culture in which female employees were marginalized and sexually harassed on a regular basis. (*Id.* ¶ 65). In particular, Plaintiff alleges that Blatt made it difficult for Plaintiff to do her job effectively. (*Id.* ¶ 66). He did not take her seriously despite her experience and track record as a successful marketing executive and he made inappropriate comments objectifying women. (*Id.* ¶¶ 66-67). Moreover, when Plaintiff fought against Match's

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 19-7053-MWF (FFMx) | Date:  December 20, 2019 |
| Title:      Rosette Pambakian v. Gregory Blatt et al. | |

misogynistic culture, she was faced with threats of violence and a covert smear campaign on Twitter by a different male employee.  (*Id.* ¶ 68).  When Defendants discovered the male employee responsible for the smear campaign and threats, Defendants allowed him to quietly resign rather than fire him and risk a scandal.  (*Id.*).

Because of Defendants' actions, Plaintiff has suffered and continues to suffer, among other damages, severe emotional distress, a loss of income, and loss of earning capacity.  (*Id.* ¶ 69).

Based on the foregoing allegations, Plaintiff brings eight claims for relief:  (1) negligence; (2) intentional infliction of emotional distress; (3) sexual battery; (4) gender violence; (5) freedom from violence pursuant to the Ralph Act; (6) negligent misrepresentation; (7) wrongful termination in violation of public policy; and (8) retaliation for engaging in protected activity.  (*Id.* ¶¶ 71-131).

### B.    **Arbitration Agreement**

In December 2017, Match adopted an Alternative Dispute Resolution Program for California (the "ADR Program").  (Declaration of Lina Alcala ("Alcala Decl.") ¶ 5 (Docket No. 30-1); *Id.* ¶ 6, Ex. B ("ADR Agreement") (Docket No. 30-2)).  The ADR Program became effective on February 1, 2018.  (ADR Agreement at 1).

On January 17, 2018, the Human Resources Department of Match Group, LLC emailed Plaintiff titled "Please DocuSign: Match Group Policy Recertification." (Alcala Decl. ¶ 8, Ex. C).  The email contained the following message:

> MatchGroup requires that ALL employees annually certify their familiarity and compliance with MatchGroup/IAC's policies, including certain critically important policies.  We ask that you read through the policies (accessible via link below) and answer two quick questions at the end of each policy.  After you read through and answer two questions per policy, you'll be prompted to sign to certify acknowledgment of your review of the policies.  This will submit your recertification to HR and you will receive a PDF confirmation via email from Adobe Sign.  Your certification

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.  CV 19-7053-MWF (FFMx)            Date:  December 20, 2019**

Title:       Rosette Pambakian v. Gregory Blatt et al.

is due by no later than Wednesday, February 28, 2018.  ***In addition, we
have included the new alternative dispute resolution program at the end
of the document.  Please review and sign the summary.***

(*Id.*) (emphasis added).  Plaintiff electronically signed the summary of the alternative
dispute resolution mentioned in the email on January 20, 2018.  (Alcala Decl. ¶ 9, Ex.
A (the "Summary Agreement")).

The first paragraph of the Summary Agreement that Plaintiff signed
contains the following:

> 1. <u>Agreement to Arbitrate; Claims Covered by Agreement</u>  The parties
> hereto agree that all references to the "Company" in this Agreement will
> include Match Group, Inc., and all of its related subsidiary and affiliated
> entities, and the former, current and future officers, directors and
> employees of all such entities . . . ***[T]he Company and the Associate
> hereby consent to resolution by arbitration*** on an individual basis of ***all
> claims or controversies arising out of or in connection with Associate's
> application with, employment with, or termination from, the Company***.  .
> . . This Agreement is mutual, encompassing all claims the Associate may
> have against the Company or that the Company may have against the
> Associate, except as explicitly stated in the [ADR] Program.  ***The claims
> covered by this Agreement include***, but are not limited to, claims for
> wages or other compensation due; claims for breach of any contract,
> express or implied; tort claims; ***claims for discrimination, harassment or
> retaliation of any kind***; and claims for violation of any federal, state or
> other statute, ordinance, regulation, or common law.

(Summary Agreement ¶ 1) (emphasis added).

The Summary Agreement additionally contains the following provisions:

> 2. <u>Governing Law</u>  . . . Except as provided or under the Program, or as
> required by law, the ***Federal Arbitration Act shall govern the***

---

**CIVIL MINUTES—GENERAL                              5**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  CV 19-7053-MWF (FFMx)          Date:  December 20, 2019
Title:        Rosette Pambakian v. Gregory Blatt et al.

*interpretation, enforcement and all proceedings pursuant to this
Agreement* . . .

5.  Summary  This is only a summary of the Program.  The Program can
only be amended, modified, or revoked within 14 days prior notice to
Associate, which amendment, modification or revocation will not affect
claims which have already been submitted under the Program . . .

*Associate also understands that it is his/her responsibility to review the
Match Group, Inc. Alternative Dispute Resolution Program which
contains all of the terms under which disputes will be resolved under the
Program.  The Program document is incorporated by reference into this
document.*  A complete copy of the Program can be obtained at the
Company's Human Resources' office or by accessing MatchGroup policies
external link in workday through a personal computer.  The Program can
be found in the "Policies" section of the workday dashboard.

(*Id.* ¶¶ 2, 5; *Id.* at Alcala-6) (emphasis added).

The full ADR Agreement contains similar language defining the Company, the
types of claims covered by the ADR Program, and the application of the Federal
Arbitration Act ("FAA").  (*See* ADR Agreement §§ 1, 2, 4.1).  For example, the full
ADR Agreement provides that the Company and the Associate "consent and agree to
the resolution by arbitration of *all claims or controversies involving or in any way
concerning Associate's application with, employment with, or termination from, the
Company.*"  (*Id.* § 2) (emphasis added).

In addition, the ADR Agreement provides the following description of the
arbitration process:

Arbitration under this Program shall be before a single arbitrator in the
country in which the dispute arose and will be administered in accordance
with the applicable arbitration rules and procedures of the American
Arbitration Association (AAA) or another alternative dispute resolution

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  CV 19-7053-MWF (FFMx)                Date:  December 20, 2019
Title:      Rosette Pambakian v. Gregory Blatt et al.

(ADR) provider selected by the parties (except where the AAA or other
ADR provider's rules are contrary to applicable state or federal law), and
California Code of Civil Procedure Section 1280 *et seq.*

(*Id.* § 6).

## II.   **LEGAL STANDARD**

The Federal Arbitration Act ("FAA") requires district courts to compel
arbitration on all claims subject to arbitration agreements.  *See Dean Witter Reynolds,
Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the Act leaves no place for the
exercise of discretion by a district court, but instead mandates that district courts shall
direct the parties to proceed to arbitration on issues as to which an arbitration
agreement has been signed.") (citing 9 U.S.C. §§ 3, 4).  However, every arbitration
agreement is subject to generally applicable contract defenses, including waiver and
unconscionability.  *See Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 719 (9th Cir.
2012) (stating that "the FAA's savings clause permits agreements to arbitrate to be
invalidated by generally applicable contract defenses, such as fraud, duress, or
unconscionability" or waiver, and analyzing whether the defendant waived its right to
arbitration through its litigation conduct) (internal quotation marks omitted).

The Supreme Court has counseled that "questions of arbitrability must be
addressed with a healthy regard for the federal policy favoring arbitration . . . ."
*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)
(quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25
(1983)).  "Thus, as with any other contract, the parties' intentions control, but those
intentions are generously construed as to issues of arbitrability."  *Id.*

Because the FAA favors arbitration, the burden is on the plaintiff to prove that
the arbitration agreement is, in fact, not enforceable.  *See Mortensen v. Bresnan
Commc'ns, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013) ("[T]hose parties challenging the
enforceability of an arbitration agreement bear the burden of proving that the provision
is unenforceable.").  Even if the plaintiff meets that burden, the district court has the
discretion to sever the unconscionable portions of the arbitration provision, if

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 19-7053-MWF (FFMx) | Date:  December 20, 2019 |
| Title:     Rosette Pambakian v. Gregory Blatt et al. | |

severance would cure the unconscionability.  *See Lara v. Onsite Health, Inc.*, 896 F. Supp. 2d 831, 847 (N.D. Cal. 2012) (severing problematic portions of the arbitration provision and compelling arbitration); *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 122, 99 Cal. Rptr. 2d 745 (2000) (holding that severance is proper unless the arbitration agreement contains more than one unlawful provision and is "permeated by an unlawful purpose").

## III.    **REQUEST FOR JUDICIAL NOTICE**

In conjunction with their Motion, Defendants request that the Court take judicial notice of (1) the complaint filed in *Sean Rad et al. v. IAC/InterActiveCorp et al.*, Index No. 654038/2018, IAS Part 39 (Sup. Ct., N.Y. Cty.) and (2) the Notice of Partial Discontinuance Without Prejudice filed in the same case.  (*See* Request for Judicial Notice ("RJN") (Docket No. 31)).  Plaintiff did not object to the RJN.

The Court may take judicial notice of court filings and other matters of public record.  *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).  However, the Court does not rely on the documents attached in the RJN in ruling on the Motion and would reach the same ruling regardless of whether it considered the two documents.

Accordingly, Defendants' RJN is **DENIED** *as moot*.

## IV.    **DISCUSSION**

As a threshold matter, the Court must determine whether the Court or the arbitrator must decide the issue of arbitrability.  Although the parties disputed this issue in their briefings, Defendants at the hearing requested that the Court decide the arbitrability of the claims at issue.  Therefore, the Court examines whether Plaintiff's claims are subject to arbitration.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  CV 19-7053-MWF (FFMx)              Date:  December 20, 2019
Title:      Rosette Pambakian v. Gregory Blatt et al.

## A.     Retroactivity of the Claims

Plaintiff argues that her claims are not subject to arbitration because they predate the Agreement; Plaintiff was sexually assaulted by Blatt in 2016, but the ADR Agreement only became effective starting February 1, 2018 – years after Plaintiff's claims first accrued.  (Opp. at 10).

First, Plaintiff argues that the plain terms of the ADR Agreement establish that it does not apply retroactively.  (*Id.*)  Specifically, Plaintiff points to the verbs in the relevant provision, which states that the Program covers "all claims or controversies *involving* or in any way *concerning* Associate's application with, employment with, or termination from the Company."  (ADR Agreement § 2) (emphasis added).  Because these verbs are present principles, Plaintiff argues that they express *present* action, not *past* action.  (Opp. at 10).

Second, Plaintiff argues that for an arbitration agreement to apply retroactively, it must contain "express, unequivocal language" to that effect.  (*Id.* at 11 (citing *Long v. Fid. Water Sys., Inc.*, No. C-97-20118 RMW, 2000 WL 989914, at *3 (N.D. Cal. May 26, 2000)).  Here, Plaintiff argues that there is nothing in the ADR Agreement that express provides for retroactive application.  (Opp. at 11).

In response, Defendants argue that the ADR Agreement expressly provides that claims arising before the ADR Agreement was signed would be subject to arbitration.  (Reply at 14).  Specifically, Defendants point to a different word in the same provision at issue: The Program covers "all claims or controversies involving or in any way concerning Associate's *application with*, employment with, or termination from the Company."  (ADR Agreement § 2) (emphasis added).  If the ADR Agreement did not apply retroactively, Defendants argue that the term "application with" would be surplusage.

Moreover, Defendants dispute Plaintiff's grammar.  They argue that the phrases using the words ending in "-ing" do not connote present tense, but merely continuity.  (Reply at 15).  In support of this argument, Defendants cite a number of decisions in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  CV 19-7053-MWF (FFMx)              Date:  December 20, 2019
Title:      Rosette Pambakian v. Gregory Blatt et al.

which courts have found that the terms "arising out of" or "relating to" included preexisting claims.  (*Id.* (citing cases)).

Defendants primarily rely on *Sanfilippo v. Tinder, Inc.*, which examined the same ADR Agreement at issue here.  No. CV 18-8372-AB (EMx), 2018 WL 6681197, at *4-*5 (C.D. Cal. Dec. 18, 2018).  There, the plaintiff similarly argued that Tinder's ADR Agreement did not apply to her sexual harassment claims, which occurred and were reported before the ADR Agreement went into effect.  *Id.* at *5.  The district court disagreed.  The district court first noted that case law is mixed as to whether an arbitration agreement applies retroactively when there is no language that limits the agreement temporally.  *Id.* at *5 (collecting cases)).  Nonetheless, the court noted that ***this*** agreement did not appear to intend to limit arbitration to future claims.  *Id.*

Specifically, the district court examined the Summary Agreement and noted that the addition of "in connection with" after the initial clause "arising out of" seemed to extend the scope of the agreement well beyond present or future disputes.  *Id.*  The district court also observed that the defendant's hiring practices in connection with the plaintiff's application with the defendant would have certainly occurred prior to the agreement's effective date.  *Id.*  Accordingly, the district court concluded that the ADR Agreement applied to all of the plaintiff's claims against the defendant, including those that predated the effective date of the agreement.

The Court views the reasoning in *Sanfilippo* as persuasive.  The language of the arbitration agreement is broad and does not appear to impose a temporal limit.  The Court also determines that use of the present participle (e.g., involving or concerning) does not limit the scope of the agreement to only present and continuing conduct.  This interpretation is further corroborated by the fact that the agreement indisputably covers claims or controversies in connection with Plaintiff's ***application*** with the Company.

Plaintiff attempts to distinguish *Sanfilippo* by pointing out that the district court analyzed the Summary Agreement instead of the full ADR Agreement.  (Opp. at 12).  However, as Defendants note, the terms in the two agreements are substantially similar.  (*Compare* Summary Agreement § 1 ("all claims or controversies ***arising out of or in connection*** with Associate's application with, employment with, or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  CV 19-7053-MWF (FFMx)              Date:  December 20, 2019
Title:       Rosette Pambakian v. Gregory Blatt et al.

termination from, the Company") with ADR Agreement § 2 ("all claims or controversies *involving or in any way concerning* Associate's application with, employment with, or termination from, the Company")).  The slight difference in wording between the Summary Agreement and the ADR Agreement does not change the Court's analysis.  Therefore, the Court determines that the ADR Agreement applies to retroactive claims.

Although not briefed in her papers, Plaintiff additionally argued at the hearing that her claims should not be arbitrated because her sexual harassment claims are not related to any conduct Blatt engaged in as CEO.  In other words, Plaintiff appears to be arguing that the scope of the arbitration agreement must be limited to conduct that Blatt engaged in as part of his duties as a CEO.  However, Plaintiff could not cite any provision in the ADR Agreement or any authority in support of this argument at the hearing.

Based on the broad language of the ADR Agreement, the Court determines that Plaintiff's allegations fall within the scope of the arbitration agreement.  Plaintiff's claims are based on an incident that occurred at a work holiday party where many employees were present.  Moreover, the arbitration agreement provides that "[t]he *claims covered . . . include*, but are not limited to . . . *harassment* or retaliation of any kind – including without limitation discrimination, harassment, or retaliation based on gender."  (ADR Agreement § 2) (emphasis added).  This provision supports Defendants' argument that the parties intended to encompass the types of claims Plaintiff has brought in this action within the scope of their arbitration agreement.

Accordingly, the Court determines that the ADR Agreement applies to Plaintiff's claims.

**B.     Unconscionability**

Plaintiff argues that the ADR Agreement is also unenforceable because it is unconscionable.  (Opp. at 12-20).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 19-7053-MWF (FFMx) | Date:  December 20, 2019 |
| Title:      Rosette Pambakian v. Gregory Blatt et al. | |

"One common formulation of unconscionability is that it refers to an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1243, 200 Cal. Rptr. 3d 7 (2016) (internal quotation marks and citation omitted). "As that formulation implicitly recognizes, the doctrine of unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *Id.*

"The prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114, 99 Cal. Rptr. 2d 745 (2000) (internal quotation marks and citation omitted). These two elements, however, need not be present in the same degree. *Id.* "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.*

"[A] finding of procedural unconscionability does not mean that a contract will not be enforced, but rather that courts will scrutinize the substantive terms of the contract to ensure they are not manifestly unfair or one-sided." *Baltazar*, 62 Cal. 4th at 1244 (internal quotation marks and citation omitted). "Ordinary contracts of adhesion, although they are indispensable facts of modern life that are generally enforced [citation], contain a degree of procedural unconscionability even without any notable surprises, and bear within them the clear danger of oppression and overreaching." *Id.* "[C]ourts must be particularly attuned to this danger in the employment setting, where economic pressure exerted by employers on all but the most sought-after employees may be particularly acute." *Id.*

Here, Plaintiff argues that the ADR Agreement is both procedurally and substantively unconscionable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 19-7053-MWF (FFMx) | Date:  December 20, 2019 |
| Title:     Rosette Pambakian v. Gregory Blatt et al. | |

### 1.     Procedural Unconscionability

Procedural unconscionability "concerns the manner in which the contract was negotiated and the respective circumstances of the parties at the time." *Kinney v. United Healthcare Servs., Inc.*, 70 Cal. App. 4th 1322, 1329, 83 Cal.Rptr.2d 348 (1999). This element focuses on two factors: "oppression" and "surprise." *See A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486, 186 Cal. Rptr. 114 (1982). "'Oppression' arises from an inequality which results in no real negotiation and 'an absence of meaningful choice.'" *Id.* "'Surprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." *Id.*

Plaintiff first argues that the timing and circumstances under which Plaintiff and other employees were forced to sign the ADR Agreement make it procedurally unconscionable. (Opp. at 14). For example, Plaintiff asserts that Defendants approached her with an NDA in October 2017 and offered her an increase in compensation in exchange for her silence about Blatt's sexual assault. (*Id.* at 5). In December 2017, Plaintiff alleges that Match adopted the ADR Program unbeknownst to Tinder employees, including Plaintiff. (*Id.*). And just one month later, Plaintiff received an email containing a link to a DocuSign file with five Match and IAC policies, one of which was the Alternative Dispute Program. (*Id.* at 6).

Even though this policy was new to Tinder employees, Plaintiff further argues that Match never openly and thoroughly described the existence or impact of the policy to the employees before giving it to them to sign. (*Id.* at 14). No one discussed the terms with Plaintiff, asked whether she understood them, or asked if she had any questions. (*Id.* (citing Declaration of Rosette Pambakian ("Pambakian Decl.") ¶ 4 (Docket No. 45-14)). She also had no opportunity to negotiate the terms of the Agreement. (*Id.*).

With regard to the element of "surprise," Plaintiff argues that the applicable rules of the ADR Agreement are uncertain and hidden. (Opp. at 15). First, Plaintiff argues that the agreement does not specify which arbitration rules and procedures govern as it states that any arbitration will proceed "in accordance with the applicable

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
<u>CIVIL MINUTES—GENERAL</u>

Case No.  CV 19-7053-MWF (FFMx)              Date:  December 20, 2019
Title:      Rosette Pambakian v. Gregory Blatt et al.

arbitration rules and procedures of the American Arbitration Association (AAA) *or* another alternative dispute resolution (ADR) provider selected by the parties." (*Id.*) (emphasis added).  Thus, Plaintiff argues that on its face, the agreement does not disclose which set of arbitration rules govern.  (*Id.*).  Moreover, Plaintiff argues that Defendants never provided Plaintiff with a copy of the full set of arbitration rules under which she would be bound; instead, the Summary Agreement directed Plaintiff to go outside the document to review the full terms of the Agreement.  (*Id.* at 16).  Plaintiff further argues the agreement does not clearly state that the employer could unilaterally select an ADR provider, which is what Defendants did here.  (*Id.* at 15).  In sum, Plaintiff argues that the ADR Agreement is procedurally unconscionable because it is a "'take it or leave' contract chock-full of hidden terms." (*Id.* at 16).

In response, Defendants point out that when Match instituted its ADR Program, it emailed Plaintiff to point out "the new alternative dispute resolution program," and asked her to sign the Summary Agreement, which included a summary of the relevant provisions of the ADR Program.  (Reply at 18).  Above the signature block of the document, there is also language asking Plaintiff to review the ADR Program and advising Plaintiff where the ADR Agreement will be posted.  (*Id.*).  Although Defendants acknowledge that they did not attach a copy of the AAA rules, they argue that failure to attach rules that are incorporated by reference in the argument does not render the agreement procedurally unconscionable.  (*Id.* at 19)

Defendants also argue that there is no "oppression" here.  (*Id.* at 18).  While they acknowledge that Plaintiff did not negotiate the terms of the contract, they argue that she must show more to establish that the contract is procedurally unconscionable.  (*Id.* at 19).  Defendants point out that she has not done so.  For example, Defendants point out that Plaintiff has presented no evidence that she would have suffered any adverse employment action by refusing to sign.  (*Id.*).

The Court concludes that there is some degree of procedural unconscionability.  It is undisputed that the ADR Agreement is a contract of adhesion, which was provided to Plaintiff as a standardized form document with no opportunity for her to negotiate the terms.  Moreover, Defendants did not clearly provide the applicable procedural rules.  The ADR Agreement states that "[a]rbitration . . . will be administered in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  CV 19-7053-MWF (FFMx)                  Date:  December 20, 2019
Title:       Rosette Pambakian v. Gregory Blatt et al.

accordance with the applicable rules and procedures of the American Arbitration
Association (AAA) ***or another alternative dispute resolution (ADR) provider selected
by the parties***.”  (ADR Agreement § 6) (emphasis added).  Based on the plain language
of this provision, the ADR Agreement does not clearly specify what procedural rules
would apply, and this lack of clarity adds to procedural unconscionability.

At the hearing, Defendants cited *Poublon v. C.H. Robinson Company*, 846 F.3d
1251 (2017) in support of their argument that the ADR Agreement was not
procedurally unconscionable.  However, *Poublon* is distinguishable.  There, the ADR
Agreement expressly provided that the “Employment Arbitration Rules and Mediation
Procedures of the American Arbitration Association” would apply in arbitration.  846
F.3d at 1258.  In contrast, the ADR Agreement here does not specify that the AAA
rules would apply in all arbitration cases, let alone that the AAA employment
arbitration rules would apply.

However, the rest of Plaintiff’s arguments are not persuasive.  Plaintiff suggests
that Match instituted the ADR Program because she refused to sign an NDA and
refused to stay silent about her sexual assault allegation against Blatt.  However, there
is no evidence to support this allegation.  Moreover, even if Plaintiff’s argument were
true, the Court notes that the Program was instituted across the whole firm and was not
instituted only against Plaintiff.

The Court also does not find that the ADR Agreement was artfully hidden.
Although the email containing the Summary Agreement contained other attachments, it
concluded with the following two sentences: “In addition, we have included the new
alternative dispute resolution program at the end of the document.  Please review and
sign the summary.”  (*Id.*).  Moreover, the Ninth Circuit has held that incorporating
arbitration procedure rules by reference rather than including them in or attaching them
to the arbitration agreement does not affect the finding of procedural
unconscionability.  *See Poublon*, 846 F.3d at 1262.

In sum, the Court determines that there is some degree of procedural
unconscionability.  Therefore, the Court examines whether the agreement is also
substantively unconscionable.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 19-7053-MWF (FFMx) | Date: December 20, 2019 |
|---|---|---|
| Title: | Rosette Pambakian v. Gregory Blatt et al. | |

### 2.    Substantive Unconscionability

"Substantive unconscionability focuses on whether the provision is overly harsh or one-sided and is shown if the disputed provision of the contract falls outside the 'reasonable expectations' of the nondrafting party or is 'unduly oppressive.'" *Gutierrez v. Autowest, Inc.*, 114 Cal. App. 4th 77, 88, 7 Cal. Rptr. 3d 267, 275 (2003) (citing *Armendariz*, 24 Cal. 4th at 113-14).

Here, Plaintiff argues that the ADR Agreement is substantively unconscionable for five reasons. (Opp. at 17-20). First, Plaintiff argues that requiring her arbitration to be confidential is unconscionable. (*Id.* at 17). Second, Plaintiff cites to the ADR Agreement's provision providing Defendants a unilateral right to amend, modify, change, or revoke the agreement without providing Plaintiff a corresponding right. (*Id.* at 18). Third, Plaintiff argues that any delegation of questions concerning the agreement's enforceability to an arbitrator is unconscionable because the agreement does not "clearly and unmistakably" delegate questions about the validity and enforceability of the agreement to an arbitrator. (*Id.*). Fourth, the ADR Agreement carves out judicial resolution of claims that Defendants are more likely to possess, such as intellectual property claims. (*Id.* at 19). Fifth, the ADR Agreement applies retroactively. (*Id.* at 19-20).

Defendants refute all five points. At the hearing, Defendants also emphasized that the Ninth Circuit's decision in *Poublon* forecloses most of Plaintiff's arguments. The Court agrees with Defendants.

First, it appears that the confidentiality clause at issue requires the ***arbitrator*** to maintain the confidentiality of the proceedings, not the parties. (*See* Reply at 21). At least one other court has found that a confidentiality provision that applies only to the arbitrator is not substantively unconscionable. *See Melez v. Kaiser Found. Hosps., Inc.*, No. 2:14-CV-08772-CAS, 2015 WL 898455, at *11, n.16 (C.D. Cal. Mar. 2, 2015) ("[A] rule imposing a duty of confidentiality on the arbitrator does not raise the same risks as a rule imposing such a duty on the parties: *i.e.*, the risk that employees will be hampered in their efforts to investigate and enlist the assistance of coworkers in arbitrating their claims, while the employer will be free to accumulate a body of

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  CV 19-7053-MWF (FFMx)            Date:  December 20, 2019
Title:      Rosette Pambakian v. Gregory Blatt et al.

knowledge and learn from past arbitrations.").  Moreover, to the extent that the
confidentiality provision imposes a duty on the parties to maintain confidentiality, the
Ninth Circuit has held that such provisions are not substantively unconscionable under
California law so long as the duty does not otherwise limit the parties' ability to litigate
their cases.  *See Poublon*, 846 F.3d at 1266-67.

Second, the ADR Agreement's provision permitting Match to unilaterally amend
the agreement after giving employees 14 days' notice does not render the ADR
Agreement unconscionable.  "California courts have held that the implied covenant of
good faith and fair dealing prevents a party from exercising its rights under a unilateral
modification clause in a way that would make it unconscionable." *Tompkins v.
23andMe, Inc.*, 840 F.3d 1016, 1033 (9th Cir. 2016) (citing cases).  "Although [the
Ninth Circuit has] held that a unilateral modification provision itself may be
unconscionable, *see Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1179 (9th Cir.
2003), [it has] not held that such an unconscionable provision makes the arbitration
provision or the contract as a whole unenforceable."  *Id.*  For the same reasons
articulated in *Tompkins*, Plaintiff has not carried her burden in demonstrating that the
unilateral modification provision renders the entire arbitration agreement
unconscionable.

Third, the Court determines that the ADR Agreement does not carve out judicial
resolution of claims Defendants are more likely to possess.  Instead, the ADR
Agreement incorporates and provides examples of the right to emergency injunctive
relief available under California Civil Procedure Code § 1281.8.  As Defendant notes,
the California Court of Appeal has found similar provisions to be not substantively
unconscionable.  *See Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1247-48 (2016).

Finally, the Court notes that Plaintiff cites no authority in support of her
argument that the ADR Agreement is substantively unconscionable because it
delegates enforcement questions to an arbitrator and because it applies retroactively.
Indeed, as Defendants point out in their Reply, other courts have upheld arbitration
agreements with similar provisions.  (Reply at 23-24).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  CV 19-7053-MWF (FFMx)              Date:  December 20, 2019
Title:      Rosette Pambakian v. Gregory Blatt et al.

For the reasons stated above, the ADR Agreement is not substantively unconscionable.  Therefore, the Court cannot conclude that the ADR Agreement is unenforceable under the doctrine of unconscionability.

C.    **Breach**

"A bedrock principle of California contract law is that [h]e who seeks to enforce a contract must show that he has complied with the conditions and agreements of the contract on his part to be performed."  *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010 (9th Cir. 2005) (internal quotation marks and citation omitted).

Even if the Agreement is valid and enforceable, Plaintiff argues that the Motion should be denied because Defendants breached the arbitration agreement in three ways.

First, Plaintiff argues that Blatt breached the agreement by filing another suit – a defamation complaint against Plaintiff – in federal court.  (Opp. at 22; Declaration of Elizabeth Graham ("Graham Decl."), Ex. 3 (Docket 45-3)).  Plaintiff relies on *Brown v. Dillard's,* which held that the employer breached the arbitration agreement when it attempted to enforce an arbitration agreement after initially refusing the participate in the arbitration proceeding that the employee initiated.  430 F.3d at 1010.  The Ninth Circuit held that the employer's initial refusal to arbitrate constituted breach and upheld the trial court's decision to deny the employer's motion to compel arbitration.  *Id*.  In response, Defendants argue that the facts here are distinguishable from *Brown*.  Specifically, they point out that Blatt filed a demand for arbitration on the same day he filed his lawsuit, anticipating that he would need to move to compel arbitration in court.  (Reply at 25).

Second, Plaintiff argues that Defendants breached the agreement by filing a consolidated arbitration demand against Plaintiff without her knowledge or consent.  (Opp. at 22).  Plaintiff argues that this consolidated demand contradicts the terms of the ADR Agreement, which states that "arbitration shall proceed solely on an individual basis without the right for any claims to be arbitrated as a class, consolidated, collective or representative action.  Claims may not be joined or consolidated unless agreed to by all parties in writing."  (*Id.* (citing ADR Agreement §

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  CV 19-7053-MWF (FFMx)              Date:  December 20, 2019
Title:       Rosette Pambakian v. Gregory Blatt et al.

2)).  In response, Defendants argue that this argument fails because Defendants have
asserted no claims against Plaintiff in their demand for arbitration; rather, they have
only demanded arbitration of Plaintiff's claims against them.  (Reply at 25).

     Third, Plaintiff argues that Defendants also breached the agreement by filing a
demand with the AAA without first meeting and conferring with Plaintiff.  (Opp. at
23).  Because the ADR Agreement states that the arbitration will take place before the
"[AAA] *or* another alternative dispute resolution (ADR) provider *selected by the
parties*," Plaintiff argues that Defendants' actions violated Plaintiff's contractual rights.
(*Id.* (citing ADR Agreement § 6)).  In response, Defendants argue that the ADR
Agreement contains no requirement for the parties to meet and confer before filing the
arbitration demand.  (Reply at 25).

     The Court agrees with Defendants:

     As to the first argument, although an employer can breach the ADR Agreement
by refusing to participate in the arbitration agreement, Defendants here have not done
so.  While they did file their related defamation case in federal court, they also
concurrently filed a demand for arbitration and filed a motion to compel arbitration in
that action before any discovery took place.  Accordingly, the Court finds that
Defendants did not breach the ADR Agreement by filing the defamation lawsuit in
court.

     As to the second argument, Defendants did not materially breach the ADR
Agreement by filing one consolidated demand for arbitration.  The ADR Agreement
states that "arbitration shall proceed solely on an individual basis without the right for
any claims to be arbitrated as a . . . consolidated action."  (ADR Agreement § 2).  Here,
it is undisputed that Defendants jointly filed a single arbitration demand against
Plaintiff regarding the claims in this action.  (Declaration of Hunter Hayes ("Hayes
Decl."), Ex. 1).  The Court does not determine whether the claims against the three
Defendants should proceed together or individually in arbitration.  For the purpose of
this analysis, the Court only determines that Defendant's decision to file one demand
for arbitration for all three defendants was not a *material* breach of the contract;
Defendants filed the demand in response to Plaintiff's Complaint, which named all

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  CV 19-7053-MWF (FFMx)            Date:  December 20, 2019
Title:       Rosette Pambakian v. Gregory Blatt et al.

three Defendants.  Moreover, Defendants' demand for arbitration does not conclusively determine whether the claims are being arbitrated as a consolidated action or not.

        As to Plaintiff's third argument, the ADR Agreement provides that the arbitration will take place before the AAA *or* another ADR provider of the parties' choosing.  Based on the plain language of the Agreement, Defendants have not breached the agreement by choosing the AAA without first consulting Plaintiff.

        Accordingly, the Court concludes that Defendants did not beach the ADR Agreement.

        D.    **Waiver**

        A written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  But the "right to arbitration, like any other contract right, can be waived."  *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 921 (9th Cir. 2009).  "[W]aiver of the right to arbitration is disfavored because it is a contractual right, and thus any party arguing waiver of arbitration bears a heavy burden of proof."  *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 758 (9th Cir. 1988) (citations omitted).  Accordingly, "[a]ny examination of whether the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements."  *Fisher v. A.G. Becker Paribas, Inc.*, 791 F.2d 691, 694 (9th Cir. 1986).  In the Ninth Circuit, "[a] party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts."  *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016) (internal quotation marks and citation omitted).

        Here, Plaintiff argues that Blatt waived his right to enforce the agreement by filing suit against Plaintiff in federal court, which she argues satisfies all three elements.  (Opp. at 23-24).  Defendants do not dispute that Blatt knew of his right to arbitrate, but do dispute the existence of any inconsistent acts or any prejudice.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  CV 19-7053-MWF (FFMx)          Date:  December 20, 2019
Title:        Rosette Pambakian v. Gregory Blatt et al.

Plaintiff argues that Blatt acted inconsistently with his right to arbitrate when he continued litigating his defamation action in court for more than a month and half after filing his complaint.  (*Id.* at 24).  Because Blatt admits in his demand for arbitration that this defamation case is "related" to the present action, Plaintiff argues that Blatt acted inconsistently with pursuing his right to arbitrate.  (*Id.*).  In response, Blatt points out that he also filed an arbitration demand when he filed the defamation action and that he has not used the machinery of the courts to gain an unfair advantage before seeking to compel arbitration.  (Reply at 26).

"There is no concrete test to determine whether a party has engaged in acts that are inconsistent with its right to arbitrate."  *Martin*, 829 F.3d at 1125.  Courts have determined that "a party's extended silence and delay in moving for arbitration may indicate a 'conscious decision to continue to seek judicial judgment on the merits of [the] arbitrable claims,' which would be inconsistent with a right to arbitrate."  *Id.* (quoting *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 759 (9th Cir. 1988)).  Under the Ninth Circuit law, "this element is satisfied when a party chooses to delay his right to compel arbitration by actively litigating his case to take advantage of being in federal court."  *Id.*  "A statement by a party that it has a right to arbitration in pleadings or motions is not enough to defeat a claim of waiver."  *Id.*  "This is especially true when parties state well into the litigation that they do not intend to move to compel arbitration."  *Id.*

Here, the Court determines that Blatt did not engage in acts inconsistent with his right to arbitrate.  Although Blatt filed his related defamation lawsuit in federal court and even filed an amended complaint, he moved to compel arbitration before any motions were filed or discovery took place.  Plaintiff has not cited to any cases where a court has determined that a party has waived his right to arbitrate based on such a small amount of delay.  In contrast, Defendants have pointed to cases in which courts have found similar actions to be consistent with the right to arbitration.  *See e.g., Paxton v. Macy's W. Stores, Inc.*, No. 1:18-CV-00132-LJO (SKO), 2018 WL 4297763, at *11 (E.D. Cal. Sept. 7, 2018) (determining that a defendant did not take actions inconsistent with the right to arbitrate when it filed an answer, removed the action, and took the plaintiff's deposition for the limited purpose of engaging in discovery about

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  CV 19-7053-MWF (FFMx)                Date:  December 20, 2019
Title:       Rosette Pambakian v. Gregory Blatt et al.

the arbitration agreement before filing a motion to compel arbitration).  Accordingly, the Court concludes that Blatt has not engaged in acts that are inconsistent with its right to arbitrate.

Plaintiff next asserts that she has suffered prejudice because Blatt has gained an unfair advantage by getting a preview of Plaintiff's arguments, which he can now use in crafting his legal strategy in arbitration.  (Opp. at 24).  Additionally, by litigating parallel actions in court and arbitration, Plaintiff suggests that Blatt is attempting to forum shop.  (*Id.*).  However, given that Blatt has moved to compel arbitration before the answer was due and before any motions were filed, the Court concludes that Defendants have not engaged in forum shopping by filing the lawsuit and moving to compel arbitration soon afterward.

Accordingly, Blatt did not waive his right to compel arbitration.

For the foregoing reasons, the Motion is **GRANTED**.

In the Ninth Circuit, the district court has discretion to dismiss a party's complaint where the court finds that the arbitration clause covers all of the party's claims.  *See, e.g.*, *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014) (affirming dismissal of action where "all of [the plaintiff's] claims fall within the scope of th[e] arbitration agreement"); *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988) (affirming dismissal of action where "the arbitration clause was broad enough to bar all of the plaintiff's claims since it required [the plaintiff] to submit all claims to arbitration").  Because the Lease Agreement encompasses all of Plaintiff's claims, the Court in its discretion chooses dismissal instead of a stay.

Accordingly, the action is **DISMISSED** *without prejudice*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** **CV 19-7053-MWF (FFMx)** | **Date:  December 20, 2019** |
| Title:       Rosette Pambakian v. Gregory Blatt et al. | |

   This Order shall constitute notice of entry of judgment pursuant to Federal Rule of Civil Procedure 58.  Pursuant to Local Rule 58-6, the Court **ORDERS** the Clerk to treat this Order, and its entry on the docket, as an entry of judgment.

   IT IS SO ORDERED.